**In re Gregory L.A. THOMAS, Respondent.**

**No. 98–BG–713.**

District of Columbia Court of Appeals.

Argued March 19, 1999.
Decided Nov. 12, 1999.

Gregory L.A. Thomas, pro se.

Ross T. Dicker, Assistant Bar Counsel, with whom Leonard H. Becker, Bar Counsel at the time the brief was filed, was on the brief, for the Office of Bar Counsel.

Elizabeth J. Branda, Executive Attorney, for the Board on Professional Responsibility.

Before STEADMAN and RUIZ, Associate Judges, and GALLAGHER, Senior Judge.

GALLAGHER, Senior Judge:

The Board on Professional Responsibility ("the Board") recommended that respondent, Gregory L.A. Thomas, be disbarred. Attorney Thomas filed several exceptions to the Board's Report and Recommendation. Bar Counsel filed a limited exception contending the Board should have ordered restitution as a condition of reinstatement. We adopt the recommendation of the Board that Attorney Thomas be disbarred.

## I. Facts

### A. *The Holmes Matter, Bar Docket No. 184–93*

On July 20, 1989, Delores Holmes, while working for the American Federation of Teachers, slipped on a wet floor at the Washington Hilton Hotel ("Hilton") and suffered injuries. Holmes retained Gregory Thomas to represent her in a civil action for damages filed against Hilton. Attorney Thomas also filed a workers' compensation claim related to this incident on behalf of Holmes against her employer and its insurance carrier, INA.[1]

INA paid for some of Holmes' medical bills which related to her July 20th injury. Attorney Thomas negotiated with INA in an attempt to obtain a waiver of INA's statutory lien on any proceeds from the civil action against Hilton.

On January 29, 1991, while Attorney Thomas and Hilton were negotiating a settlement of the civil action, INA informed Hilton that INA had paid medical bills on behalf of Holmes and was asserting its statutory lien on any settlement proceeds. Holmes reached a settlement with Hilton on February 7, 1991, in the amount of $8,500. On February 14, 1991, Attorney

---

1. INA is part of the CIGNA group of insurance companies. At times, the Committee referred to the company as CIGNA or CIG-NA/INA. For simplicity, where possible, we will refer to the company as INA.

Thomas prepared a "Settlement Statement," proposing to distribute the proceeds in the following fashion: $2,833.33 to Attorney Thomas as his contingency fee, $4,087 to pay Holmes' medical bills and reimburse the insurance companies, and $1,579.67 to Holmes. Holmes signed this document. On February 18, 1991, Hilton sent a letter to INA, with a copy to Attorney Thomas, informing INA that the settlement draft of $8,500 would be made payable to Holmes, Thomas, and INA as the "lienholder." On February 20, 1991, INA sent a letter to Attorney Thomas stating that the amount of the lien was $2,272.85.

On March 18, 1991, Holmes and INA settled the workers' compensation claim, with INA agreeing to pay Holmes' medical expenses, incurred through November 1989, relating to her July 20th injury. INA confirmed the settlement and requested that Attorney Thomas submit all of Holmes' outstanding medical expenses. Attorney Thomas did not respond to this request. INA sent another letter to Attorney Thomas, confirming that Hilton agreed to recognize INA's lien of $2,272.85, and stating that the lien may be less depending on the amount of Holmes' unpaid medical bills through November 1989.

Attorney Thomas wrote a letter to Hilton objecting to the inclusion of INA as a payee on the settlement draft, suggesting Hilton issue a separate draft for INA. On April 2, 1991, Hilton issued a draft listing Holmes, Thomas, and INA as payees. Hilton responded to Attorney Thomas' letter, stating it was informed that INA had a "valid workmen's compensation lien in this matter." Meanwhile, INA continued its attempts to determine the amount of Holmes' unpaid medical bills by requesting the information from Attorney Thomas.

Attorney Thomas received the settlement draft for $8,500 from Hilton. Both Thomas and Holmes endorsed the draft. INA, however, did not. Attorney Thomas deposited the draft in his clients' escrow account with the Industrial Bank of Washington ("Industrial Bank"). Attorney Thomas did not advise INA that he had received the draft, or that he had deposited the draft in the escrow account without INA's endorsement. INA again requested information on Holmes' unpaid medical bills. Attorney Thomas did not respond.

On May 8, 1991, Attorney Thomas' escrow account had a balance of $12,947.56. Subsequently, Attorney Thomas wrote checks to himself, his employee, and others. On July 18, 1991, the account had a balance of $103.55. Holmes, however, had not received from Attorney Thomas any disbursement of funds relating to her settlement with Hilton.

In 1992, Holmes retained another attorney, Mark Schaffer, to represent her in an unrelated workers' compensation claim against her employer involving carpal tunnel syndrome. Holmes expressed her concern to Attorney Schaffer over the status of her settlement with Hilton, and that she could not receive a satisfactory explanation from Attorney Thomas. Schaffer made repeated attempts to learn from Thomas about the settlement. Thomas offered no explanation to Schaffer. In May 1993, Holmes filed a complaint with the Bar concerning Attorney Thomas' handling of her settlement with Hilton.

Subsequently, on December 3, 1993, Attorney Thomas deposited $8,093 into his clients' escrow account, which raised the balance to $8,112.36. On December 6, 1993, Attorney Thomas sent to his client, Holmes, a "revised settlement statement," which proposed a distribution of the Hilton settlement funds that differed from the distribution Thomas proposed on February 14, 1991. Under this new proposal, CIGNA/INA would receive $2,272.85 from the Hilton settlement. This correspondence was accompanied by a photocopy of a check from Thomas made payable to CIGNA/INA. But Attorney Thomas never actually forwarded the check to INA.

Rather, he kept the money as his own attorney's fee in this matter.

The Board concluded that during this time, Attorney Thomas engaged in commingling of his personal funds with his clients' funds. In August 1991, Attorney Thomas received a settlement for a personal injury claim of his own and unrelated to his representation of Holmes. Attorney Thomas received a check for $8,822 from State Farm Insurance Company made payable solely to Thomas, and deposited it into his clients' escrow account.

Bar Counsel charged Attorney Thomas with six violations of the District of Columbia Rules of Professional Conduct: commingling (Rule 1.15(a)), misappropriation (Rule 1.15(b)), failing to notify a third party promptly of the receipt of funds in which the third party has an interest (Rule 1.15(b)), failing to keep client reasonably informed (Rule 1.4(a)), engaging in acts of dishonesty (Rule 8.4(c)), and engaging in conduct seriously interfering with the administration of justice (Rule 8.4(d)). Bar Counsel chose not to pursue the latter violation of Rule 8.4(d).

Hearing Committee Number Five ("the Committee") found Attorney Thomas had engaged in commingling and misappropriation, failed to keep his client reasonably informed, and had engaged in acts of dishonesty.[2] The Committee recommended disbarment. Attorney Thomas filed an exception to the Committee's Report and Recommendation. Bar Counsel filed a limited exception to the Committee's report, challenging the Committee's finding that the evidence was insufficient to show Attorney Thomas had failed to notify a third party of the receipt of funds in which it had an interest.

The Board issued its Report and Recommendation on May 7, 1998. The Board found that Attorney Thomas had engaged in misappropriation, commingling, and dishonesty. In addition, the Board found that Attorney Thomas had failed to keep his client reasonably informed, and had failed to notify a third party of the receipt of funds promptly. The Board concluded that INA did have a statutory lien, but that the exact amount of the lien was not clear.

The Board recommended disbarment. The Board further deferred the issue of whether Attorney Thomas should make restitution to INA until Thomas filed a petition for reinstatement because the exact amount of INA's lien was unclear.

### B. *The Davis Matter, Bar Docket No. 343–95*

Attorney Thomas represented Sheila Davis in a dispute with New York Life Insurance Company over a policy insuring the life of Davis' fiancé. Attorney Thomas negotiated a settlement with New York Life in the amount of $10,000. The settlement draft was deposited in the Thomas client escrow account on March 24, 1995. By agreement between Thomas and Davis, the settlement proceeds were shared equally.

New York Life then agreed to refund to Davis the insurance premium of $614.64. Davis agreed that Attorney Thomas would receive $294.88 from this settlement as his fee.

Attorney Thomas received a draft from New York Life for $614.64, made payable to himself and Davis. Attorney Thomas cashed the draft, kept $200 in cash, and deposited $409.76 in his clients' escrow account. Attorney Thomas gave Davis $100 in cash as an advance on the amount due to her. However, Attorney Thomas did not formalize this arrangement.

On September 7, 1995, Attorney Thomas gave Davis a check for $409.76. While visiting her family in California, Davis asked her son-in-law to cash her check at his bank. Attorney Thomas, however, had previously drawn four checks on his es-

---

**2.** The Committee found the evidence insufficient to establish that Thomas had failed to notify a third party of the receipt of settlement funds in which the third party had an interest.

crow account made payable to himself. As a result, the escrow account balance fell to $348.45. When the check to Davis was presented to Industrial Bank, it was honored. Attorney Thomas' clients' escrow account, however, dropped to a negative balance of $61.31. Attorney Thomas deposited $100 in his clients' escrow account on September 18, 1995.

Hearing Committee Number Seven found a violation of D.C. Bar R. XI, § 19(f), and Rule 1.15(a). The Committee concluded, however, that there was insufficient evidence to find an intentional or reckless misappropriation. The Board concurred with the Committee's findings. The Davis matter was then consolidated with the Holmes matter.

### C. *The Consolidated Matters*

The Board concluded that if the Davis matter "were the sole violation committed by Respondent" it would "likely carry a sanction of less than suspension." "But because it occurred after the conduct in the first [Holmes] matter had been brought to Bar Counsel's and Respondent's attention, a more severe sanction may have been warranted." (Citations omitted.) The Board recommended disbarment on the basis of both matters. Neither Bar Counsel nor Attorney Thomas filed an exception with respect to the Davis matter. Both Attorney Thomas and Bar Counsel filed exceptions to the Board's Report and Recommendation concerning the Holmes matter.

### II. Standard of Review

When no exception has been filed with this court concerning the Board's recommendation, we will accept that recommendation. D.C. Bar R. XI, § 9(g)(2); *In re Delaney*, 697 A.2d 1212, 1214 (D.C.1997). In this instance, no exception has been filed with respect to the Davis matter. We therefore accept the recommendation of the Board that because the conduct occurred after the Holmes matter had been brought to Bar Counsel's attention, a more severe sanction is warranted.

Both Attorney Thomas and Bar Counsel have filed exceptions to the Board's Report and Recommendation with respect to the Holmes matter. When an exception has been filed to the Report and Recommendation by the Board, we accept the Board's findings of fact in the report "unless they are unsupported by substantial evidence of record." D.C. Bar R. XI, § 9(g)(1); *In re Clarke*, 684 A.2d 1276, 1280 (D.C.1996). Further, we will adopt the recommendation of the Board, "unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C. Bar R. XI, § 9(g)(1). We turn now to the exceptions to the Board's Report on the Holmes matter.

### III. Attorney Thomas' Exceptions

We initially turn to the exceptions noted by Attorney Thomas. Thomas first contends that INA failed to perfect its lien against Holmes' settlement with Hilton and that Thomas had no duty to notify INA of his receipt of the settlement draft from Hilton.

The Board concluded, however, that the evidence was "clear and convincing that INA had a statutory lien of some amount." Further, an attorney may not withdraw funds deposited in a client escrow account where the attorney's right to receive the funds is in dispute. *See In re Haar*, 667 A.2d 1350, 1353 (D.C.1995) (holding attorney may not withdraw legal fees from client account when client disputes attorney's right to receive the fees). Indeed, an attorney has a duty to protect the property of third parties in the attorney's custody. *See* D.C. Rules of Professional Conduct 1.15, cmt. [4]. In this instance, INA asserted its right to a statutory lien against Holmes' settlement with Hilton. Attorney Thomas, however, contended that INA had waived its lien. Accordingly, Attorney Thomas' right to receive the

funds was in dispute. Thomas should not have withdrawn funds from the account while INA's right to those funds was in dispute.

■ Attorney Thomas next contends that there was no evidence of scienter to sustain a finding that he acted dishonestly in representing to Holmes that he had satisfied INA's lien. Knowledge, however, may be inferred from the attorney's conduct. *See In re James,* 452 A.2d 163, 166 (D.C.1982). Here, Attorney Thomas sent Holmes a letter dated December 9, 1993 that included a "revised settlement sheet," and a photocopy of a check from the escrow account made payable to INA. Attorney Thomas never sent this check to INA, the payee. While he contends that his delivery of the copy of the check to Holmes was unintentional, the Board "is not required to accept his version of events." *Id.* Because both the Committee and the Board discredited Attorney Thomas' testimony, we accept the Board's conclusion that Thomas committed an act of dishonesty.

We now turn to Attorney Thomas' contention that Holmes "was well informed as to the status of her case." Attorney Thomas claims that between February 14, 1991 and July 31, 1992, he had four meetings with Holmes in person, and at least two telephone conversations. He claims that he kept Holmes informed through these contacts.

■ The quantity of contacts between the attorney and the client, however, is of little importance when the attorney provides sparse or misleading information to the client. Specifically, the Board found "Respondent misled Holmes into thinking that her money was in his escrow account and then stopped providing her with information altogether." In giving such misleading information, then, he failed to keep Holmes correctly informed.

■ Attorney Thomas next contends that the Board independently determined that he had "intentionally misappropriated

settlement proceeds as opposed to simple misappropriation as so found by Committee Five." A violation of Rule 1.15(b) occurs whenever the balance in the client escrow account falls below the amount due to the client. *In re Micheel,* 610 A.2d 231, 233 (D.C.1992). Here, the evidence clearly showed that the balance of the client escrow account fell below the amount due to Holmes.

■ "[I]n virtually all cases of misappropriation, disbarment will be the only appropriate sanction unless it appears that the misconduct resulted from nothing more than simple negligence." *In re Addams,* 579 A.2d 190, 191 (D.C.1990) (en banc). In his brief, Attorney Thomas quotes the recommendation of the Committee, which states, "This is misappropriation, plain and simple." By selecting this one quote completely out of context, Attorney Thomas would have this court agree that the Committee did not find intentional misappropriation. However, the Committee clearly found that Attorney Thomas' actions were intentional and fraudulent:

> The misappropriation shown here was not the product of simple negligence, and no such claim is made by respondent.... Thomas used his client's funds without her knowledge or permission, lied to her and Bar Counsel about it and tried to cover it up with fraud, including fraudulently fabricated documents.... The cross-examination of Respondent reveals that, on occasions too numerous to specify, Respondent's testimony was largely fabricated.

The evidence is clear, then, that Attorney Thomas committed an intentional misappropriation of client funds.

■ Next, Attorney Thomas challenges the Board's conclusion that he engaged in commingling of funds. Specifically, Attorney Thomas argues that because some unspecified parties other than Thomas had an interest in his own personal injury settlement, he was bound to deposit

the settlement in his clients' escrow account.

The check from State Farm that Attorney Thomas deposited into the client escrow account, however, identified solely Thomas as the payee. It represented Attorney Thomas' personal funds. When Attorney Thomas deposited it into his client escrow account, his personal funds and those of his clients became intermingled so that their separate identity was lost. *See In re Hessler*, 549 A.2d 700, 707 (D.C. 1988). We, therefore, accept the Board's conclusion that commingling occurred.

 Attorney Thomas further contends that there was a complete lack of evidence to establish that he had failed to keep complete records of his clients' accounts. This finding of fact, however, was made by the Committee, Attorney Thomas failed to file an exception to this finding with the Board. Therefore, he has waived his right to pursue it before this court. *See In re Ray*, 675 A.2d 1381, 1386 n. 5 (D.C.1996); *In re Williams*, 464 A.2d 115, 118 (D.C.1983).

Finally, Attorney Thomas challenges the issuance of subpoenas *duces tecum* upon Industrial Bank within an eighteen month period. Attorney Thomas contends: (1) Bar Counsel failed to follow Super Ct. Civ. R. 5 & 6; (2) Bar Counsel required Industrial Bank to produce documentation about his account which violated the Fifth Amendment; and (3) Bar Counsel was motivated out of vindictiveness.

 First, we note that Bar Counsel's subpoena power is subject to the civil rules, *see* D.C. Bar R. XI, sec. 18, which provide that a party to civil litigation is to be given notice of "any commanded production of documents," *see* Super. Ct. Civ. R. 45(b)(1) [3]. Thomas, however, did not raise before the Board the question of how the civil rules are to apply to Bar Counsel proceedings. We, therefore, consider the

issue waived, and decline to address it. *See In re Huber*, 708 A.2d 259, 261 (D.C. 1998); *In re Clarke*, 684 A.2d 1276, 1280 (D.C.1996); *In re James*, 452 A.2d 163, 168–69 (D.C.1982).

 Next, we address whether the issuance of the subpoenas *duces tecum* violated the Fifth Amendment. The Supreme Court has held "a party incriminated by evidence produced by a third party sustains no violation of his own Fifth Amendment rights." *California Bankers Ass'n v. Shultz*, 416 U.S. 21, 55, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974) (citing *Couch v. United States*, 409 U.S. 322, 328, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973); *Johnson v. United States*, 228 U.S. 457, 458, 33 S.Ct. 572, 57 L.Ed. 919 (1913)). The records in question were produced by the bank, and not by Attorney Thomas. Therefore, we perceive no Fifth Amendment violation.

 Finally, we address the issue of whether Bar Counsel was motivated out of vindictiveness. Attorney Thomas claims that because he represented Ronald Ray in an unrelated disciplinary case, *see In re Ray*, 675 A.2d 1381 (D.C.1996), Bar Counsel harbored an improper animus requiring dismissal of the charges against him. *See United States v. Mangieri*, 224 U.S.App. D.C. 295, 298, 694 F.2d 1270, 1273 (1982) (discussing the standards for a defense of selective prosecution).

The Board addressed this argument, and found no merit to it:

There is absolutely no credible evidence to support Respondent's theory that this investigation was launched because the Assistant Bar Counsel was biased against him.... The only basis for Respondent's claim of Assistant Bar Counsel's vindictiveness is his own characterization that his defense of Mr. Ray was "successful." This characterization, however, is greatly overstated as Mr.

---

3. In the civil context, this has been interpreted to include notice of subpoenas to third parties. *See, e.g., Okubo v. Reynolds*, 16 F.3d 1016, 1020 n. 4 (9th Cir.1994)(interpreting identical language in federal rule).

Ray was suspended from the practice of law for six months and ordered to make restitution.... Moreover, it is implausible that such an event would trigger any animosity in an Assistant Bar Counsel. These attorneys handle scores of cases each year, and not infrequently the result obtained is not the same as the result sought. Indeed, the most that Respondent has shown is that his defense of Mr. Ray and the investigation of himself stemming from Ms. Holmes' complaint occurred over the same general time frame and involved the same Assistant Bar Counsel.

We agree with this finding of the Board, and conclude that the contention is frivolous.

### IV. Bar Counsel's Exceptions

Next, we focus on the exceptions filed by Bar Counsel. Bar Counsel claims the Board erred in failing to order Attorney Thomas to make full restitution to INA as a condition of reinstatement. A reading of the Board's recommendation reveals that the Board deferred the issue of restitution until Attorney Thomas seeks reinstatement. The Board's recommendation states:

Finally, we note the Respondent [Thomas] has never paid CIGNA/INA the $2,272.85 statutory lien. Under most circumstances, we would recommend that Respondent make restitution of misappropriated funds pursuant to Rule XI, § 3(b). Since there is some issue as to the exact amount of the lien, we decline to recommend restitution but note that should Respondent ever seek reinstatement, he will have to address this $2,272.85 statutory lien and what he did to satisfy it. See In re Robinson, 705 A.2d 687 (D.C.1998); In re Roundtree, 503 A.2d 1215 (D.C.1985).

This court has adopted recommendations of the Board to defer the issue of restitution until the filing of a petition of reinstatement based on the "unsatisfactory state of the record." In re Lewis, 689

A.2d 561, 567 (D.C.1997). See also In re Morrell, 684 A.2d 361, 372 n. 5 (D.C.1996). We are bound, however, by the Board's findings of fact, and must "enter an appropriate order." See D.C. Bar R. XI, § 9(g). In this instance the Board concluded that INA did have a legal right to payment:

The evidence is clear and convincing that INA had a statutory lien of some amount, probably $2,272.85, and that Respondent never made any attempt to notify INA of the receipt of these funds..... To the extent there was any ambiguity in connection with this lien, it was only as to its exact amount, but not as to its existence.

In workers' compensation cases, for the statutory lien to apply, the claimant must have been awarded benefits under a compensation order filed with the Mayor. D.C.Code § 36–335(b) (1997 Repl.). In this instance, Holmes never received benefits under a workers' compensation order. Rather, the workers' compensation claim was settled before a hearing was held.

■ Nonetheless, our law recognizes that a workers' compensation insurer has an equitable lien on the recovery from a third party tortfeasor. See Washington Metro. Area Transit Auth. v. Reid, 666 A.2d 41, 44 (D.C.1995); Travelers Ins. Co. v. Haden, 418 A.2d 1078, 1081 (D.C.1980). "The insurer is subrogated to the 'employer's implied right of reimbursement out of an employee's third party recovery.'" Haden, supra, 418 A.2d at 1081 (quoting Petition of Sheffield Tankers Corp., 222 F.Supp. 441, 443 (N.D.Cal.1963)). The insurer protects this subrogation right either through direct intervention in the third party tort action, or by notification to the third party. Id.

■ Here, the Hearing Committee concluded that there was support in the record that the settlement of the workers' compensation claim involved a waiver of the insurer's statutory lien, and that therefore INA's entitlement to a lien against the settlement proceeds from Hilton was not

 

established by clear and convincing evidence. A waiver, however, is the unilateral, voluntary and intentional relinquishment of a known right. *See Embassy of Benin v. District of Columbia Bd. of Zoning Adjustment,* 534 A.2d 310, 323 (D.C. 1987); *Bailey v. Greenberg,* 516 A.2d 934, 939 n. 5 (D.C.1986). *See also Government Employees Ins. Co. v. Group Hospitalization Medical Servs., Inc.,* 322 Md. 645, 589 A.2d 464, 466 (1991). A waiver can involve conduct that "warrants an inference of the relinquishment of such right." *Food Fair v. Blumberg,* 234 Md. 521, 200 A.2d 166, 172 (1964).

■ There is a factual issue in this case concerning waiver of INA's claimed statutory lien against the settlement proceeds from Hilton. The existence and amount of the lien need not be resolved at this time. Restitution of any amount which is to be owed by Thomas to INA is a factor that should be considered in Thomas' reinstatement petition.

### V. Conclusion

We approve the recommendations of the Board.

The respondent, Gregory L.A. Thomas, is hereby disbarred from the practice of law in the District of Columbia, effective thirty days from the date of this opinion. The determination as to whether restitution is owed should be deferred until Mr. Thomas files a petition for reinstatement.

*So ordered.*