In re Samuel N. OMWENGA,
Respondent.

A Suspended Member of the Bar of the
District of Columbia Court of Appeals
(Bar Registration No. 461761).

No. 11–BG–942.

District of Columbia Court of Appeals.

Argued April 10, 2012.

Decided Aug. 16, 2012.

Samuel N. Omwenga, Washington, pro se.

Catherine L. Kello, Assistant Bar Counsel, with whom Wallace E. Shipp, Jr., Bar

Counsel, and Judith Hetherton, Senior Assistant Bar Counsel, were on the brief for petitioner.

Before WASHINGTON, Chief Judge, and BECKWITH and EASTERLY, Associate Judges.

PER CURIAM:

This matter comes before us upon the report and recommendation of the Board on Professional Responsibility ("Board"). The Board found that respondent Samuel N. Omwenga committed fifty-eight violations of twenty Rules of Professional Conduct in four consolidated matters. The Board has unanimously recommended to this court that respondent be disbarred based upon his: 1) intentional misappropriation in a matter involving respondent's client, Dawit Shifaw, and 2) other misconduct, particularly respondent's flagrant dishonesty, in all four client matters before the Board's consideration. Respondent takes exception to the Board's report and recommendation in its entirety, arguing that the Board's recommendation of disbarment is wholly without basis and unsupported by clear and convincing record evidence. We disagree, and accept the Board's findings and adopt its recommended sanction.[1] Accordingly, we order that respondent Samuel N. Omwenga be disbarred.

## I.

The charges of disciplinary rule violations arose from a series of actions and inactions by respondent in five client matters. Based upon ethical complaints filed by a number of respondent's former clients and upon Bar Counsel's own investigation, Bar Counsel charged respondent with sixty-eight violations of twenty Rules of Professional Conduct, including intentional misappropriation of client funds in the Shifaw matter and dishonesty in three additional matters involving respondent's clients Josephine Gitau, Yeneneh Hailu, and Cane Mwihava. Because Bar Counsel failed to establish by clear and convincing evidence any violations with respect to the fifth matter, we focus our attention on the four remaining matters.

We accept the Board's findings of fact, "unless they are unsupported by substantial evidence of record," and review legal conclusions *de novo.* D.C. Bar R. XI, § 9(h)(1); *In re Pierson,* 690 A.2d 941, 946–47 (D.C.1997).[2] We adopt the Board's report, which sets forth and adopts the Hearing Committee's detailed findings of fact concerning respondent's misconduct, and offer a short summary of those findings here.

Dawit Shifaw retained respondent to represent him in the purchase of a laundromat business. Shifaw agreed to pay respondent $1,000 in legal fees in connection with the transaction. Respondent instructed Shifaw to give him a certified check in the amount of the agreed upon purchase price, $48,050, which respondent deposited into his operating account. Respondent was able to negotiate a more favorable price of $46,000, and withdrew this sum on December 1, 2004, to pay the seller. On the same day, respondent also withdrew the remaining balance of $2,050 in cash. The $2,050 balance was not deposited into another one of respondent's trust accounts. Respondent had not re-

---

1. The Board's report and recommendation is attached as an appendix to this opinion.

2. The Board, in turn, is required to accept the factual findings of the Hearing Committee that are supported by substantial evidence in the record, viewed in its entirety. *In re Micheel,* 610 A.2d 231, 234 (D.C.1992). "However, the Board owes no deference to the hearing committee's determination of ultimate facts, which are really conclusions of law." *Id.* (internal quotation marks omitted).

quested Shifaw's permission to withdraw the $2,050 or to use it for any other purpose. Shifaw demanded that respondent return the $2,050. Respondent eventually returned only $1,500, while retaining the difference of $550.

The Gitau, Mwihava, and Hailu matters all pertain to respondent's representation of clients in immigration proceedings. As a result of respondent's misconduct, both Josephine Gitau and Yeneneh Hailu were ordered removed *in absentia* from the United States. Cane Mwihava was arrested and detained by U.S. Immigration and Customs Enforcement as a result of respondent's failure to file the necessary paperwork to adjust Mwihava's immigration status.

The Hearing Committee conducted a ten-day evidentiary hearing, heard the testimony of Bar Counsel's twelve witnesses and of respondent himself, and admitted more than 100 exhibits.[3] The Hearing Committee concluded that respondent committed fifty-eight violations of twenty Rules of Professional Conduct and recommended respondent's disbarment for intentional misappropriation in the Shifaw matter. Even absent evidence of respondent's intentional misappropriation, the Hearing Committee recommended disbarment based upon respondent's pattern of severe misconduct in all four matters.

Respondent filed exceptions to the Hearing Committee report while Bar Counsel took no exception. The Board heard oral argument and subsequently issued its report and recommendation, in which it expressly adopted and incorporated the Hearing Committee's report. The Board unanimously recommended[4] respondent's disbarment based upon his intentional misappropriation in the Shifaw matter and also recommended respondent's disbarment for his "serious and pervasive misconduct" in all four matters, "including the neglect and inadequate representation of his clients, his culpable indifference to their interests, his refusal to take responsibility for his actions, his lack of remorse, and his dishonesty to his clients, the courts, Bar Counsel and the Hearing Committee."

Respondent now argues before this court that the Board's recommendation of disbarment for his alleged intentional misappropriation in the Shifaw matter is wholly without basis and unsupported by clear and convincing record evidence. Respondent also argues that the Board's adverse findings in the remaining matters should be rejected as inaccurate, distorted, or unsupported by clear and convincing record evidence.

We adopt the Board's report, incorporated herein as Appendix A. In this case, we are satisfied that the record demonstrates by clear and convincing evidence that respondent intentionally misappropriated client funds in violation of Rule 1.15(a), and that respondent engaged in other serious and pervasive misconduct, most especially flagrant dishonesty to his clients, the courts, Bar Counsel, and the Hearing Committee, specifically violating Rules 3.3(a)(1), 8.1(a), and 8.4(c). We therefore turn to a discussion of the appropriate sanctions.

---

3. We suspended respondent on an interim basis on December 2, 2010.

4. Respondent claims, without support, that the failure of two members of the Board to participate in its ultimate report and recommendation fundamentally denied him due process. However, D.C. Bar R. XI, § 4(d) states in relevant part that, "[s]ix members of the Board shall constitute a quorum for deciding cases. . . ." Here, seven members of the Board rendered the unanimous report and recommendation. Therefore, his claim is without merit.

## II.

 "The [Board]'s proposed sanction comes to this court with a strong presumption in favor of its imposition." *In re White*, 11 A.3d 1226, 1233 (D.C.2011) (per curiam), *cert. denied*, —— U.S. ——, 131 S.Ct. 2941, 180 L.Ed.2d 227 (2011). We adopt the recommended disposition of the Board, " 'unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted.' " *In re Cleaver–Bascombe*, 986 A.2d 1191, 1194 (D.C.2010) (per curiam) (quoting D.C. Bar R. XI, § 9(h)(1)).

*Intentional Misappropriation*

 "[I]n virtually all cases of misappropriation, disbarment will be the only appropriate sanction unless it appears that the misconduct resulted from nothing more than simple negligence." *Matter of Addams*, 579 A.2d 190, 191 (D.C.1990) (en banc). We emphasize that "a sanction as severe as disbarment is warranted in cases involving misappropriation of client funds because such violations strike at the core of the attorney-client relationship by undermining the public's faith that attorneys will fulfill their duties as fiduciaries in handling funds entrusted to them by their clients." *In re Pierson*, 690 A.2d at 948 (internal citation and quotation marks omitted).

Here, the record unequivocally supports the conclusion that respondent intentionally misappropriated client funds in the Shifaw matter. Respondent withdrew the remaining balance of $2,050 without Shifaw's permission and used that sum for a purpose unrelated to the purchase of the laundromat business. Respondent then compounded this offense when he only partially refunded Shifaw $1,500 and re-

tained $550.[5] Therefore, we accept the Board's recommendation that respondent be disbarred for intentional misappropriation. *See In re Carlson*, 745 A.2d 257, 259 (D.C.2000).

*Dishonesty*

 Even absent evidence of intentional misappropriation, disbarment is warranted in this case based on respondent's other serious and pervasive misconduct alone, particularly his flagrant dishonesty. This court "reserve[s] the sanction of disbarment for the most extreme attorney misconduct," including "dishonesty 'of the flagrant kind.' " *In re Howes*, 39 A.3d 1, 15 (D.C.2012) (internal citation omitted); *see In re Cleaver–Bascombe*, 986 A.2d at 1199 ("Where we have concluded that the attorney's conduct falls into a category of dishonesty of a flagrant kind we have held disbarment to be the appropriate sanction."). Particularly where dishonesty "is aggravated and prolonged, disbarment is the appropriate sanction." *In re Howes*, 39 A.3d at 15.

Here, the record reflects that in connection with the Shifaw matter, respondent made a series of misrepresentations before the trial court for which he was sanctioned on five occasions. Respondent also filed false affidavits with the immigration court on behalf of his clients in the Gitau and Hailu matters, and made serious misrepresentations to his client in the Mwihava matter. Additionally, respondent made false statements to Bar Counsel in response to ethical complaints and testified untruthfully before the Hearing Committee.

 "To determine what discipline is appropriate under the circumstances, we review the respondent's violations in light

---

**5.** Although respondent contends that the amount at issue is $550, we emphasize that respondent intentionally misappropriated the full amount of $2,050 when he withdrew that sum without Shifaw's permission.

of all the relevant factors." *In re Cleaver–Bascombe*, 986 A.2d at 1195. "These factors include (1) the nature of the violation, (2) the mitigating and aggravating circumstances, (3) the need to protect the public, the courts, and the legal profession, and (4) the moral fitness of the attorney." *Id.* (alteration in original) (internal quotation and citation marks omitted).

First, the record indicates that the nature of the violation is egregious. Respondent repeatedly exhibited dishonesty in dealing with his clients, the courts, Bar Counsel, and the Hearing Committee. *See In re Howes*, 39 A.3d at 18 (approving disbarment where respondent repeatedly concealed his misuse of witness vouchers to the trial court and opposing counsel); *In re White*, 11 A.3d at 1233 (finding disbarment appropriate where respondent made false accusations, fabricated evidence, and falsely recounted events to the Council for the District of Columbia). Moreover, respondent's dishonest conduct was coupled with a blatant disregard for his clients, a number of whom faced the threat of deportation.

Second, neither the Hearing Committee nor the Board identified any mitigating factors. As the record demonstrates, respondent vehemently denied responsibility in all of the client matters before the Board's consideration, never expressed regret or sorrow for what happened to his clients as a result of his misconduct, gave false testimony before the Hearing Committee by contradicting documented evidence before it, and had previously been the subject of disciplinary matters in three unrelated client matters, which as the Hearing Committee noted, "involve conduct strikingly similar to that proven in the instant cases." *See In re Reback*, 513 A.2d 226, 233 (D.C.1986) (en banc) (identifying relevant mitigating factors as admission of wrongdoing, contriteness, full cooperation throughout disciplinary proceedings, and unblemished record of professional conduct).

Instead, the record demonstrates features of aggravation, including respondent's prior disciplinary record and dishonesty during disciplinary proceedings. *See In re White*, 11 A.3d at 1248. As the Hearing Committee recognized, "[a] troubling pattern in these proceedings is [r]espondent's persistent and pervasive practice of claiming that his integrity is unassailable." Respondent made false statements of fact in connection with all four client matters before the Board's consideration and engaged in dishonest conduct before the courts also relating to those client matters. Respondent's explanation for his failure to act or alleged misconduct was often expressly contradicted by documents and other evidence contained in the record.

Third, the Board and Hearing Committee both identified the need to protect the public, as did this court when it suspended respondent on an interim basis and recognized that he appeared to pose a substantial threat of serious harm to the public. *In re Omwenga*, No. 10–BG–1352 (D.C. Dec. 2, 2010). Given the need to protect the public, the courts, and the legal profession by promoting general deterrence among attorneys, we find respondent's misconduct especially problematic given that it could have easily gone undetected on account of his clients' status as noncitizens. *See In re Kanu*, 5 A.3d 1, 15 (D.C.2010).

Fourth and finally, we are satisfied that respondent lacks the moral fitness to remain a member of the legal profession. *See id.* at 1200–01. Balancing the above four factors and even considering respondent's dishonesty alone, we are satisfied that disbarment is the appropriate sanction. Accordingly, it is

ORDERED that respondent Samuel N. Omwenga is disbarred from the practice of law in the District of Columbia, effective thirty days from the date of this opinion. *See* D.C.Bar. R. XI, § 14(f). Respondent shall not be eligible for reinstatement for five years from the effective date of disbarment, pursuant to D.C. Bar R. XI, § 16(a). It is further

ORDERED, as a condition of reinstatement to membership in the bar, Samuel N. Omwenga shall make restitution to Dawit Shifaw in the amount of $550, with accrued interest at the legal rate from December 1, 2004. We defer the issue of restitution related to respondent's failure to return other unearned fees or advanced costs until reinstatement and remind respondent that whether he has made full restitution to his clients and/or the Clients' Security Trust Fund, as appropriate, will be "highly relevant" if respondent seeks reinstatement.[6] *In re Morrell,* 684 A.2d 361, 372 n. 5 (1996).

Finally, respondent's attention is called to D.C. Bar R. XI, § 14, including the affidavit requirement of subsection (g), and to the consequences of not timely complying with the requirements of section 14 set forth in D.C. Bar R. XI, § 16(c). For the purposes of reinstatement to the bar, respondent's disbarment shall commence on the date he files a sufficient affidavit pursuant to D.C. Bar R. XI, § 14(g).

*So ordered.*

**6.** Although Bar Counsel took no exception to the Board's report and recommendation, it argued before this court that respondent's reinstatement should be conditioned upon his reimbursing the Clients' Security Fund for any liquidated damages paid to any of his clients. However, because Bar Counsel failed to take exception to the Board's report and recommendation, we decline to reach this argument and consider it waived. *See* D.C. Bar

*APPENDIX*

## DISTRICT OF COLUMBIA COURT OF APPEALS BOARD ON PROFESSIONAL RESPONSIBILITY

In the Matter of: SAMUEL N. OMWENGA, Respondent.

A Suspended Member of the Bar of the District of Columbia Court of Appeals (Bar Registration No. 461761)

Bar Docket Nos. 204–05, 231–06, 106–08, 142–08, and 016–09

## REPORT AND RECOMMENDATION OF THE *BOARD ON PROFESSIONAL RESPONSIBILITY*

Bar Counsel charged Respondent with 68 violations of the Rules of Professional Conduct ("Rules"), including two instances of intentional misappropriation, in connection with his representation of five different clients. The Hearing Committee concluded in a comprehensive 109–page report that Respondent committed intentional misappropriation in one matter and 57 other violations of the disciplinary rules, and recommended disbarment with restitution to four clients as a condition of reinstatement. For the reasons set forth in the Hearing Committee's report, which we adopt and incorporate except as specifically set forth herein, the Board recommends that Respondent be disbarred and that he be required to make restitution to one client in the amount of $550, with interest at the legal rate, as a condition of reinstatement.[1]

R. XI, § 9(i) ("If Bar Counsel disagrees with the findings or recommendation of the Board, the position of the Board may be presented before the Court, upon request of the Board, by the Executive Attorney or other counsel.").

**1.** A copy of the Hearing Committee's Report and Recommendation is appended hereto and cited herein as "H.C. Rpt."

## I. PROCEDURAL HISTORY

This disciplinary proceeding was prompted by the filing of ethical complaints by five clients of Respondent: Tadessi Beraki, Josephine Gitau, Cane Mwihava, Yeneneh Hailu and Dawit Shifaw. Bar Counsel filed Specifications of Charges against Respondent on April 1, 2009, and May 29, 2009.

Respondent filed answers on May 18, 2009, June 3, 2009 and July 13, 2009, asserting that the charges against him were meritless.

On June 10, 2009, the Board, *sua sponte*, ordered the five matters consolidated for all purposes herein.

Between November 16, 2009 and February 22, 2010, the Hearing Committee conducted ten days of evidentiary hearings on November 16, 17, 23, 24, and December 7, 8, 10, 2009 and February 18, 19, 22, 2010. The Hearing Committee heard testimony from 12 Bar Counsel witnesses and from Respondent and admitted over 100 exhibits.

The Hearing Committee issued its Report and Recommendation on February 4, 2011. Respondent filed exceptions to the Hearing Committee's Report and Recommendation, and on May 2, 2011, filed a brief setting forth the reasons for his exception. Bar Counsel filed a brief on May 26, 2011, to which Respondent filed a reply on June 13, 2011. Oral argument was held before the Board on June 23, 2011.[2]

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Hearing Committee's findings of fact are supported by substantial evidence in the record, and there is clear and convincing evidence that his conduct violated the disciplinary rules found by the Hearing Committee.[3] The Hearing Committee's findings of fact ("FF") are summarized below:[4]

### A. *Gitau Matter (Bar Docket No. 231–06)*

Respondent represented Josephine Gitau in connection with her removal proceeding before the Immigration and Naturalization Service ("INS"), and in her application for permanent residence status. FF 39 at 16. Respondent failed to

**2.** On December 2, 2010, the Court temporarily suspended Respondent from practice pursuant to D.C. Bar R. XI, § 3(c), on the grounds that he "appears to pose a substantial threat of serious harm to the public." *See* Order, *In re Omwenga*, No. 10–BG–1352 (D.C. Dec. 2, 2010). The Court's order of temporary suspension is based in part on the allegations of misconduct that are the basis of this proceeding. Our recommendation is based solely on the record in this case.

**3.** The Hearing Committee found that Respondent violated the following Rules of Professional Conduct in the five consolidated matters: 1.1(a), 1.1(b), 1.3(a), 1.3(b)(1), 1.3(b)(2), 1.3(c), 1.4(a), 1.4(b), 1.5(b), 1.7(b)(4), 1.7(c), 3.3(a)(1), 3.4(c), 1.15(a), 1.15(b), 1.15(d), 1.16(d), 8.1(a), 8.4(c), and 8.4(d). The Hearing Committee also stated in the "Conclusion" section of its report that it found a

violation of D.C. Bar R. XI, § 2(b)(3) (failure to comply with an order of the Court or the Board), but a violation of that rule was neither charged by Bar Counsel nor discussed elsewhere in the Hearing Committee's report. We thus do not sustain the violation, but we note that it would be immaterial to our sanction recommendation.

**4.** The Hearing Committee found that Bar Counsel failed to establish by clear and convincing evidence any Rules violations with respect to the Beraki matter (Bar Docket No. 204–05), based primarily on the unreliability of the hearsay evidence, and its inability to assess the demeanor and credibility of Beraki, who did not testify at the hearing. The Board agrees with the Hearing Committee's finding that Bar Counsel failed to establish any violations by clear and convincing evidence.

communicate with Gitau or file papers with the Unites States Citizenship and Immigration Services ("USCIS", the successor to the INS). FF 51–54, 76 at 18–19, 26. Respondent advised Gitau not to appear at a February 13, 2006 immigration hearing, which Respondent also did not attend, resulting in the issuance of an order of removal *in absentia* from the United States. FF 33, 57–61, 66 at 15, 20–21, 23. Respondent then drafted an affidavit for Gitau's signature that falsely stated the reason that Gitau did not attend the hearing. FF 70–71 at 24–25. He did not advise Gitau that his incorrect advice not to attend the hearing might have formed a basis for relief from the removal order. FF 67–75, 78–80, 84, 94 at 23–27, 28–29, 33. Respondent then hired successor counsel, who successfully reopened Gitau's removal case, and the Immigration Court granted her motion to terminate removal proceedings. FF 85, 89 at 29, 31. The Hearing Committee also found that Respondent made numerous false statements in his answer to the ethical complaint, and testified falsely before the Hearing Committee. FF 35, 58–59, 62–65, 71–73, 76, 91 at 15–16, 21–23, 25–26, 32–33.

### B. *Mwihava Matter (Bar Docket No. 106–08)*

In 2005, Cane Mwihava hired Respondent to file an I–130 immigration application to adjust Mwihava's immigration status, but Respondent failed to file the application. FF 99–101, 103 at 35–37. Respondent lied to Mwihava, telling him on multiple occasions that he had filed the I–130. FF 103–08, 113 at 36–37, 39. The Hearing Committee found that despite Respondent not having filed the I–130 for which Mwihava paid legal fees of $500 and advanced costs of $740, Respondent did not return any money to Mwihava. FF 100, 108 at 36, 37. In October 2006, Immigration and Customs Enforcement ("ICE") arrested Mwihava and placed him in removal proceedings. FF 113 at 39.

Mwihava retained Respondent to represent him at an immigration removal hearing and signed an additional retainer agreement. FF 114–15 at 39–40. Several days before the removal hearing, Respondent told Mwihava that he would be out of the country, but that he had filed a request for a continuance. FF 119 at 40. Respondent told Mwihava that he had to attend the hearing, but he failed to prepare him for it. FF 120 at 40–41. At the hearing, the immigration judge, after questioning Mwihava, ordered him removed from the United States, noting that an I–130 petition has not been filed. FF 123–25 at 41–42. Respondent thereafter appealed to the Board of Immigration Appeals ("BIA"), but did not file a timely brief. FF 131 at 44. Successor counsel thereafter filed a motion to reopen Mwihava's case based on ineffective assistance of counsel, which was granted by the BIA, and the case was remanded to the Immigration Court. FF 137 at 46. The Hearing Committee found that Respondent was untruthful in his responses to Bar Counsel and in his responses to Mwihava's ethical complaint in stating that he did not represent Mwihava in the adjustment of status matter. FF 109–12, 135–36 at 38–39, 45–46. Respondent repeated these false statements in his testimony before the Hearing Committee. FF 112 at 39.

### C. *Hailu Matter (Bar Docket No. 142–08)*

Yeneneh Hailu retained Respondent to represent him in an asylum case before the Immigration Court. FF 144 at 48. Respondent advised Hailu of the incorrect time for an asylum hearing scheduled for January 10, 2007. FF 146–52 at 49–50.

As a result, Hailu arrived at the Immigration Court after his case had been called and decided. FF 148 at 49. The court ordered Hailu to be removed *in absentia* because of his failure to appear at the hearing. FF 149 at 49. Respondent thereafter drafted an untruthful affidavit for Hailu to support a motion for reconsideration and filed that affidavit with a false notarization page. FF 163 at 54. Respondent's several motions to reconsider were denied because, *inter alia*, they failed to comply with court rules. FF 164–66 at 54–55. Respondent thereafter notified Hailu of the denials and that he would need to pay him an additional $1,000 to appeal to the BIA. FF 167 at 55. Respondent filed a brief with the BIA without reviewing the brief with Hailu or giving him a copy. FF 170 at 56. Successor counsel obtained relief for Hailu on grounds that Respondent rendered ineffective assistance of counsel. FF 173–74 at 56–57. The Hearing Committee found that Respondent was untruthful with the Immigration Court, the BIA, and in his testimony to the Hearing Committee. FF 163, 229 at 54, 81–82.

### D. *Shifaw Matter (Bar Docket No. 016–09)*

Dawit Shifaw hired Respondent to represent him in connection with the purchase of a laundromat business. FF 178–82 at 59. Respondent negotiated for the purchase of the equipment at a price of $48,050, and Shifaw delivered a certified check in that amount to Respondent. FF 186 at 60–61. After signing a bill of sale, Respondent continued to negotiate and reached agreement on a reduced price of $46,000. FF 192 at 62. Respondent then paid the $46,000 to the seller, and withdrew the remaining $2,050 in cash. FF 193 at 62–63. Respondent did not transfer the funds to another account or provide them to Shifaw. FF 194–95 at 63. Shifaw

repeatedly asked for copies of the laundromat sales documents, but Respondent failed to provide them. FF 198–99, 204–05 at 64–65, 69–71. At a subsequent meeting, Shifaw demanded the return of the $2,050. FF 200 at 65–66. Respondent gave Shifaw a check for $1,500, but stated that he was retaining the remaining $550 as additional legal fees because he had negotiated a better sales price. *Id.* Respondent testified that Shifaw agreed to the additional legal fee out of gratitude for the lower sales price. FF 202 at 66. Shifaw testified that he did not agree to pay the additional legal fees, but did not challenge Respondent for fear that he would not provide Shifaw with documentation of the sale. FF 201 at 66. The Hearing Committee credited Shifaw's testimony, finding it credible and consistent with the evidence of record. FF 203 at 66–69. Respondent never refunded the additional $550 to Shifaw. H.C. Rpt. at 108.

Shifaw later sought to sell the laundromat equipment, and learned that Respondent had failed to verify that the seller had released its lien on the equipment or obtained any documentation to demonstrate that the lien had been terminated. FF 206–13 at 71–74. The lien was ultimately released one and a half years after Shifaw purchased the equipment. FF 215 at 74. Shifaw sued Respondent for malpractice. FF 216 at 74. In the course of those proceedings, Respondent made a series of misrepresentations to the court, and the court sanctioned Respondent five times for his conduct. FF 217, 219 at 74–77. Shifaw ultimately became frustrated over the repeated failures of both Respondent and Shifaw's own counsel to appear in court, and requested that the court dismiss the case. FF 218 at 76. The Hearing Committee also found that Respondent made false statements to Bar Counsel in re-

sponse to the ethical complaint. FF 222–25 at 78–80.

## III. SANCTION RECOMMENDATION

Bar Counsel established that Respondent engaged in intentional misappropriation of client funds in the Shifaw matter. H.C. Rpt. at 88, 105. The presumptive sanction for intentional misappropriation, absent a showing of "extraordinary circumstances," is disbarment. *See In re Addams*, 579 A.2d 190, 191 (D.C.1990) (en banc). Respondent has not established extraordinary circumstances in this case, and we thus recommend that he be disbarred.

We also agree with the Hearing Committee that even absent a finding of intentional misappropriation, disbarment is the appropriate sanction based on Respondent's other serious and pervasive misconduct, including the neglect and inadequate representation of his clients, his culpable indifference to their interests, his refusal to take responsibility for his actions, his lack of remorse, and his dishonesty to his clients, the courts, Bar Counsel and the Hearing Committee.

The appropriate sanction is one that is necessary to protect the public and the courts, maintain the integrity of the profession and deter other attorneys from engaging in similar misconduct. *See, e.g., In re Kline*, 11 A.3d 261, 265 (D.C.2011) (quoting *In re Reback*, 513 A.2d 226, 231 (D.C.1986) (en banc)). The sanction imposed must be consistent with cases involving comparable misconduct. *See* D.C. Bar R. XI, § 9(h)(1); *In re Bach*, 966 A.2d 350, 356 (D.C.2009); *In re Berryman*, 764 A.2d 760, 766 (D.C.2000). In determining the appropriate sanction, the Court considers: (1) the nature and seriousness of the misconduct, (2) the presence of misrepresentation or dishonesty, (3) Respondent's attitude toward the underlying misconduct, (4) prior misconduct, (5) mitigating or aggra-

vating circumstances, and (6) prejudice to the client. *See, e.g., In re Hutchinson*, 534 A.2d 919, 924 (D.C.1987) (en banc).

In this case, Respondent was repeatedly dishonest with his clients, courts, Bar Counsel and the Hearing Committee. This pattern of misrepresentations and false statements constitutes "dishonesty of a flagrant kind," warranting disbarment. *In re Cleaver–Bascombe*, 986 A.2d 1191, 1199 (D.C.2010) (per curiam); *see In re Kanu*, 5 A.3d 1, 15 (D.C.2010). In addition, Respondent's dishonesty was compounded by his blatant disregard of the Gitau, Mwihava, and Hailu matters, vulnerable clients facing deportation. Respondent's actions and inactions exposed each of them to serious harm, removal from the United States. As a result of Respondent's misconduct, Gitau, Mwihava, and Hailu each had to retain successor counsel. Only through their own efforts, were the clients able to remain in the United States.

In aggravation of sanction, we note that because of his clients' status as non-citizens, Respondent's misconduct was difficult to detect. *See Kanu*, 5 A.3d at 16 (considering the difficulty to detect the misconduct an aggravating factor because of the need to protect the public, the courts, and the legal profession). In addition, Respondent has failed to demonstrate any remorse or to accept responsibility for the misconduct and the adverse consequences to his clients. These are significant aggravating factors, which show that Respondent lacks the moral fitness to practice law.

In sum, the Board agrees with the Hearing Committee's characterization of Respondent's misconduct:

> Bar Counsel has proved a pattern of conduct that shows Respondent's fundamental indifference to the needs of his clients, and his apparent inability to ad-

here to court and administratively imposed deadlines. The record shows as well that Respondent repeatedly made misrepresentations of fact in the judicial and disciplinary processes, not so much because he intended to lie but because he seems unconcerned about speaking truthfully. When coupled with his history of disciplinary reprimands for similar misconduct and his failure meaningfully to acknowledge responsibility for his mistakes, his misconduct or his misrepresentations in these consolidated matters, we are convinced that the only rational result is a recommendation that Respondent be disbarred.

H.C. Rpt. at 106.

With respect to restitution, D.C. Bar R. XI, § 3(b), states that "the Court or the Board may require an attorney to make restitution either to persons financially injured by the attorney's conduct or to the Clients' Security Trust Fund ... or both, as a condition of probation or of reinstatement." *See also In re Rogers,* 902 A.2d 103, 104–05 (D.C.2006) (per curiam); *In re Bingham,* 881 A.2d 619, 622 (D.C.2005) (per curiam). The Hearing Committee recommended that Respondent be required, as a condition of reinstatement, to make restitution to Shifaw in the amount of $550, with interest at the legal rate, and restitution (in an unspecified amount) to his former clients (with the exception of Beraki) or the Clients' Security Trust Fund for any unearned fees and unincurred costs paid to him, with interest at the legal rate. H.C. Rpt. at 108. The amount of the laundromat proceeds misappropriated in the Shifaw matter is clear, and we thus adopt the Hearing Committee's recommendation that Respondent be required to make restitution to Shifaw in the misappropriated amount of $550, with interest at the legal rate, as a condition of reinstatement.

The record, however, does not permit a determination of the amount of restitution owed to Shifaw, Gitau, Mwihava, and Hailu based on Respondent's failure to return unearned fees or advanced costs. Where there is a question about the exact amount of the restitution, the Court will defer consideration of the restitution issue until the respondent applies for reinstatement. *See In re Thomas,* 740 A.2d 538, 546 (D.C. 1999) (quoting *In re Lewis,* 689 A.2d 561, 567 (D.C.1997)) ("This court has adopted recommendations of the Board to defer the issue of restitution until the filing of a petition of reinstatement based on the 'unsatisfactory state of the record.' "); *In re Hager,* 812 A.2d 904, 923 (D.C.2002) (Court deferred consideration of the amount of disgorgement because the exact amount of the fee respondent received was unknown, and he may have been entitled to a reasonable fee for work prior to the unethical conduct). The Board thus recommends that the Court defer the issue of restitution related to Respondent's failure to return unearned fees or advanced costs until reinstatement. Whether Respondent has made full restitution to his clients and/or the Clients' Security Trust Fund, as appropriate, will be "highly relevant" if Respondent seeks reinstatement. *In re Morrell,* 684 A.2d 361, 372 n. 5 (D.C.1996); *see Thomas,* 740 A.2d at 547 ("Restitution ... is a factor that should be considered in [respondent's] reinstatement petition.").

## IV. CONCLUSION

The Board recommends that Respondent be disbarred for his intentional misappropriation in the Shifaw matter and, even absent a finding of misappropriation, for his misconduct in the Shifaw, Gitau, Mwihava, and Hailu matters. Respondent should also be required to make restitution of $550 to Davit Shifaw, with interest at the legal rate, as a condition of reinstatement. We further recommend that the

▬▬▬▬▬

period of disbarment run for purposes of reinstatement from the filing of the affidavit required by D.C. Bar R. XI, § 14(g). *See In re Slosberg*, 650 A.2d 1329, 1331 (D.C.1994).

BOARD ON PROFESSIONAL RESPONSIBILITY

By: RPW

Robert P. Watkins

Dated: July 28, 2011

All members of the Board concur in this Report and Recommendation except Mr. FRANK and Ms. KAPP, who did not participate.