**In re Eric STEELE, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 03–BG–808, 04–BG–395.**

District of Columbia Court of Appeals.

Argued Dec. 7, 2004.
Decided Feb. 17, 2005.

David H. Dupree for respondent.

Elizabeth J. Branda, Executive Attorney, for the Board on Professional Responsibility.

Ross T. Dicker, Assistant Bar Counsel, with whom Joyce E. Peters, Bar Counsel, was on the brief, for the Office of Bar Counsel.

Before TERRY and RUIZ, Associate Judges, and PRYOR, Senior Judge.

PRYOR, Senior Judge:

In response to a number of complaints made to the Office of Bar Counsel against respondent by private citizens and a judicial officer, Bar Counsel, after investigation, presented evidence of multiple violations of the District of Columbia Rules of Professional Conduct ("Rules") to three hearing committees. There is little, if any, dispute about the underlying factual accounts surrounding respondent's professional conduct in these matters. Thus, the Board on Professional Responsibility ("Board") adopted the findings of fact and conclusion of law of each hearing committee. The Board, after reviewing the recommended sanctions from each committee, respectively, recommends a suspension from the practice of law for an extended

period of years in addition to a requirement of a showing of fitness for reinstatement and payment of restitution. Relying essentially on the same evidentiary facts, Bar Counsel recommends disbarment. Although both recommendations are well founded, we adopt the Board's recommendation of an extended suspension from the practice of law with requirements of proof of fitness and payment of restitution.

## I.

## BACKGROUND

### A. *Hearing Committee No. 1*

Hearing Committee No. 1, in a consolidated proceeding involving separate complaints from three different clients—Iris Richard, Janice Bean and Robert Adams—found respondent to have violated multiple provisions of the Rules.

*Iris Richard*

In September 1993, Iris Richard ("Richard") retained respondent to represent her in a discrimination action against her employer. Respondent and Richard executed a retainer agreement which provided for an attorney's fee of $9,000.00. Richard made an initial payment of $4,500.00 in January 1994, with the balance due in six months. Respondent advised Richard that it was necessary to file an administrative claim with the Equal Employment Opportunity Commission ("EEOC") by April 1, 1994. Although respondent promised Richard that he would file the claim with the EEOC on her behalf, he failed to do so and never advised Richard of this fact.

In June 1994, Richard left a message with respondent that she was unable to pay the balance of the retainer; respondent did not return her call. Thereafter, Richard unsuccessfully attempted to contact respondent on several occasions. In January 1995, respondent informed Richard that he had been ill and had deferred action on her case because she had not payed the balance of the retainer. In the summer of 1995, Richard asked respondent to provide her with a copy of the administrative claim that she assumed had been filed with the EEOC on her behalf; respondent did not respond to her request. On August 4, 1995, Richard wrote respondent requesting a copy of the complaint purportedly filed, on her behalf, in the United States District Court for the District of Maryland. Respondent informed Richard by letter that "[he] ha[d] not gone forward with [her] matter because [she] indicated an inability to pay the balance of the retainer agreement." In his letter, respondent acknowledged that the limitations period had run on one of Richard's claims, but assured her that she could still file a remaining claim pursuant to 42 U.S.C. § 1981. Seeking to resolve the matter amicably, respondent enclosed a check in the amount of $2,250.00 (i.e., half of the initial retainer payment).

In September 1995, Richard wrote to respondent stating her dissatisfaction and requesting a full refund of her initial retainer payment. Respondent did not comply. Richard filed a complaint with Bar Counsel on October 3, 1995.

Hearing Committee No. 1 found that respondent (1) failed to represent Richard zealously and diligently when he did not communicate with Richard, and failed to take the necessary steps to preserve her discrimination claims, in violation of Rule 1.3(a); (2) intentionally failed to seek the lawful objectives of Richard through reasonably available means when he abandoned her case due to her inability to pay the balance of the retainer fee, in violation of Rule 1.3(b)(1); (3) failed to act with reasonable promptness in representing Richard when he failed to file her claim with the EEOC within the limitations peri-

od, in violation of Rule 1.3(c); and (4) failed to keep Richard reasonably informed about the status of her case when he chose not to advise her that her claim had not been filed within the EEOC limitations period, and failed to promptly comply with her reasonable requests for documents, in violation of Rule 1.4(a).

### Janice Bean

In March 1994, Janice Bean ("Bean") retained respondent to represent her in a discrimination action against her employer. Respondent and Bean executed a retainer agreement, and in June 1994, respondent filed a civil complaint against the employer in the Superior Court, alleging seven causes of action, including claims under 42 U.S.C. §§ 2000e et seq. ("Title VII of the Civil Rights Act of 1964"), 42 U.S.C. § 1981, and the District of Columbia Human Rights Act.[1]

On August 17, 1994, the employer caused Bean's case to be removed from Superior Court to the United States District Court for the District of Columbia. Thereafter, the employer filed an answer to Bean's complaint as well as a counterclaim. The employer also filed a motion to dismiss a number of Bean's claims, including her Title VII cause of action; respondent failed to oppose the motion. In an order dated September 2, 1994, the District Court granted the employer's unopposed motion to dismiss in part, dismissing all of Bean's claims without prejudice except her claim under the D.C. Human Rights Act. Respondent did not inform Bean of the ruling. The District Court's order also established time-lines for the parties to file future motions as well as a schedule for pre-trial discovery. On September 2, 1994, the employer moved for summary judgment on its counterclaim. Respondent did not file an opposition, but instead filed an answer to the counterclaim. The employer informed the District Court that the parties had scheduled a settlement conference for September 12, and that the employer's maximum settlement offer for Bean's suit was $3,424.10. Respondent did not advise Bean of the employer's offer of settlement. At the September 12 settlement conference, respondent agreed to make Bean available for deposition by the employer. The parties also agreed to make initial discovery disclosures by September 22, 1994. The employer formally noticed Bean's deposition for September 27, 1994, and made its initial discovery disclosures as agreed. Respondent did not advise Bean of her scheduled deposition, and failed to make his discovery disclosures by the September 22nd deadline. Thereafter, respondent failed to respond appropriately to a number of discovery obligations. On October 3, 1994, the employer filed a motion to dismiss for discovery violations; respondent did not oppose to the motion. The court held a status conference via telephone and although respondent had notice of the status conference, he did not participate. Following the status conference, the court issued an order modifying its previous scheduling order, extending the discovery deadline to December 31, 1994, and setting a further status conference for January 3, 1995.

Bean attempted to contact respondent throughout September 1994, but her calls were not returned. She contacted respondent on October 3, 1994, informing him that she had located a potential witness and requested a meeting with respondent. She received no response until October 31, 1994, when respondent informed her that he had been injured and would speak with her shortly. Bean renewed her request for a meeting. On November 23, 1994, the

---

1. See D.C.Code § 2–1401.01 et seq. (2001) (formerly D.C.Code § 1–2501).

employer notified the District Court and respondent that Bean had failed to timely oppose the employer's motions for summary judgment on Bean's claim and the employer's counterclaim.

During the last months of 1994, Bean was unsuccessful in getting respondent to communicate with her. She also attempted—without success—to recover pertinent documents from him. On December 26, 1994, respondent faxed a letter to Bean explaining that he had not responded sooner because he had been in and out of the hospital the last several months. He informed Bean, for the first time, that her case had been removed to District Court, that the employer had filed a counterclaim against her, and recommended that she accept a settlement offer. On December 29, 1994, Bean faxed a letter to respondent informing him that she needed to speak with him immediately and that she did not wish to accept the employer's settlement offer. She instructed respondent to take no further action on her case until she spoke with him; respondent did not contact Bean.

On December 30, 1994, the employer filed a motion to dismiss Bean's complaint for failure to comply with court ordered discovery and moved for summary judgment on its counterclaim and on Bean's claim. When respondent failed to appear at a status hearing, the District Court, on January 4, granted summary judgment in favor of the employer on its counterclaim and dismissed Bean's remaining claims with prejudice. Bean filed her complaint with Bar Counsel on March 6, 1995.

Hearing Committee No. 1 found that respondent (1) failed to represent Bean zealously and diligently and failed to act with reasonable promptness when he did not provide discovery disclosures to opposing counsel, failed to file a timely answer to the employer's counter-claim against Bean, failed to respond to the employer's motion to dismiss and motion for summary judgment, and failed to appear at two court-ordered status conferences, in violation of Rules 1.3(a), (c); (2) intentionally failed to seek the lawful objectives of Bean through reasonably available means when he failed to timely notify Bean that her case had been removed to federal court, and that the employer had filed a counterclaim. The Committee also found that respondent failed to inform his client of a scheduled deposition and an offer of settlement, in violation of Rule 1.3(b)(1); (3) failed to keep Bean reasonably informed about the status of her case, failed to promptly comply with her reasonable requests for documents, and failed to explain matters to Bean to the extent reasonably necessary to permit her make informed decisions regarding the representation, in violation of Rules 1.4(a), (b); (4) failed to communicate the employer's offer of settlement to Bean, in violation of Rule 1.4(c); (5) failed to take timely steps to return certain documents to Bean, in violation of Rule 1.16(d); and (6) failed to comply with court-ordered discovery and other scheduled court dates and deadlines, in violation of Rule 8.4(d).

### Robert Adams

Robert Adams ("Adams") consulted respondent concerning a discrimination claim against his employer. They executed a retainer agreement which provided for a fee of $7,500.00 payable in five installments. Although the early payments were made, Adams failed to pay the last two installments. This circumstance prompted respondent to admonish Adams in writing that he had the right to withdraw from the case; Adams did not receive the letter.

On April 4, 1995, respondent filed a complaint against the employer in the United States District Court for the District of Maryland. When the employer moved for

summary judgment on Adams' claims, respondent did not oppose the motion. When Adams inquired about the status of his case, respondent misrepresented that he had opposed the employer's motion for summary judgment. On April 24, 1996, the District Court granted the employer's unopposed motion for summary judgment. Respondent did not inform Adams that the case had been decided on its merits in favor of the employer, and continued to misinform Adams that the case was pending. In mid-August 1996, Adams discovered that his case had been dismissed. Upon inquiry by Adams, respondent insisted the case was still pending. Adams then confronted respondent about his failure to oppose the employer's motion for summary judgment. Respondent, however, continued to maintain that he had filed an opposition, but that it must have gotten lost. Respondent informed Adams that he would correct the situation. When Adams verified that his case had been dismissed, he filed a complaint with Bar Counsel on September 4, 1996.

Hearing Committee No. 1 found that respondent (1) failed to represent Adams zealously and diligently and failed to act with reasonable promptness when he failed to file an opposition to the employer's motion for summary judgment and failed to notify Adams that the court granted the employer's unopposed motion, in violation of Rule 1.3(a), (c); (2) intentionally failed to seek the lawful objectives of Adams through reasonably available means when he abandoned Adams' case due to his inability make payments under the retainer agreement, in violation of Rule 1.3(b)(1); (3) failed to keep Adams reasonably informed about the status of the case when it had been decided on its merits in favor of the employer, and failed to notify Adams that he was withdrawing his representation due to Adams' failure to make retainer payments, in violation of Rules

1.4(a), (b); (5) failed to protect Adams' interests while a motion for summary judgment was pending when respondent terminated his services without notifying Adams or the trial court, in violation of Rule 1.16(d); (6) knowingly disobeyed an obligation under the rules of a tribunal when he unilaterally terminated his representation of Adams and failed to file a motion to withdraw his representation, in violation of Rule 3.4(c); and (7) engaged in conduct involving dishonesty, fraud, deceit or misrepresentation when he repeatedly advised Adams that he filed an opposition to the employer's motion for summary judgment when he had not done so, in violation of Rule 8.4(c).

Hearing Committee No. 1 recommended that respondent be suspended from the practice of law for six months with all but thirty days stayed, and that respondent be placed on probation for one year with his practice subject to supervision by a practice monitor.

### B. *Hearing Committee No. 10*

Dr. Tepper Gill ("Gill") retained respondent to represent him in a breach of contract action against his employer. Respondent filed a complaint on Gill's behalf in the Superior Court and the employer filed a counterclaim against Gill for losses incurred as a result of alleged unauthorized contracts entered into without appropriate authority. The litigation proceeded in a routine fashion until respondent failed to appear at a scheduled pre-trial conference on June 6, 2000. On May 26, 2000, respondent filed a motion to reschedule the pre-trial conference asserting that he had been subpoenaed to appear as a witness in a criminal case in Baltimore, Maryland on the same day as the pre-trial conference in the Gill matter.

On June 2, 2000, the judge denied respondent's motion to reschedule the pre-

trial conference. Because neither respondent nor Gill appeared for the scheduled pre-trial conference, the judge dismissed Gill's claims without prejudice, and granted, *sua sponte,* a default judgment on the employer's counterclaim against Gill. A hearing was scheduled for *ex parte* proof on the employer's counterclaim. Respondent appeared at the hearing and represented that he never received the court's order denying his motion to reschedule pre-trial conference. The judge informed respondent that the matter had been dismissed because Gill also failed to appear at the pre-trial conference. The judge refused to vacate the order of dismissal and entered judgment on the employer's counterclaim in the amount of $318,910.00.

In August 2000, respondent filed a motion to vacate the dismissal of Gill's claims, attaching a purported subpoena commanding him to appear in Baltimore on June 6, 2000—the date of the pre-trial conference in the Gill matter. The employer advised the court that the out-of-town criminal matter in which respondent was to appear as a witness never had a scheduled date of June 6, 2000, and that respondent had been subpoenaed to appear on June 13, 2000. The judge entered an order denying the motion to vacate the dismissal[2] of Gill's claims and upholding the default judgment on the employer's counterclaim. Thereafter, the judge referred respondent to the Office of Bar Counsel. In response to Bar Counsel's complaint, respondent stated that he had never received the subpoena calling for his appearance in Baltimore on June 13, 2000, but learned from his friend—the defendant in the criminal matter—that the proceeding was scheduled for June 6. In his testimony before the Hearing Committee, respondent stated

that he did not intend to deceive the court or opposing counsel, and that he assumed that he could proffer the "subpoena" that he created to serve as a substitute for that which he was supposed to receive.

Respondent admitted, and Hearing Committee No. 10 found, that he fabricated the subpoena. In finding that Gill suffered a sizable default judgment on the employer's counterclaim as a consequence of respondent's actions, or lack thereof, Hearing Committee No. 10 found respondent to be in violation of Rules 1.3(b), 3.3(a)(1), 3.4(c), 8.1(a), and 8.4(c), (d). Hearing Committee No. 10 took into consideration the factual findings and recommended sanction of Hearing Committee No. 1, and recommended that respondent be suspended from the practice of law for two years with reinstatement conditioned upon proof of fitness.

### C. *Hearing Committee No. 7*

In September 1995, Lisa Hinton ("Hinton") retained respondent to represent her in an employment discrimination action against her employer. Respondent advised Hinton that she could pursue her existing claim before the Equal Employment Opportunity Commission ("EEOC") or file a claim with the Department of Human Rights ("DHR"), or bypass the administrative agencies altogether and commence litigation in the Superior Court or in the United States District Court for the District of Columbia. In October 1995, respondent recommended that Hinton transfer her case from the EEOC to the DHR. Respondent concluded that Hinton's case before the EEOC could not proceed due to a jurisdictional question, but did not advise Hinton of this problem.

---

**2.** We later affirmed the trial court's order of dismissal in the Gill matter. *See Gill v. Howard Univ.,* 801 A.2d 949 (D.C.2002).

Respondent drafted a complaint to be filed with DHR and forwarded a copy of it to Hinton for her approval. Respondent informed Hinton that he would arrange to have the EEOC defer its investigation to DHR, but did not make any effort to accomplish that task. Respondent believed that the EEOC would dismiss Hinton's complaint on jurisdictional grounds. The EEOC, however, dismissed Hinton's complaint on the ground that it would not be able to prove that she had been discriminated against on the basis of race or disability. Upon receipt of the EEOC's notice, Hinton had ninety days to file two judicial complaints. Nonetheless, respondent allowed the limitation periods to run as to each cause of action without discussion.

In October 1996, DHR informed Hinton that it too was dismissing her case because of the EEOC's earlier dismissal. Hinton then contacted respondent and he advised her that he was going to challenge DHR's dismissal of her claim. Hinton began calling respondent at his office on a regular basis in an effort to talk with him about her case. Her attempts to reach respondent during this period were unsuccessful; she left messages asking respondent to return her calls, which he failed to do.

When respondent sent Hinton a letter containing a draft complaint to be filed in court, Hinton informed respondent that she was dissatisfied with his services and was terminating him as her counsel. She requested that respondent return all papers she supplied to him, all writings his office produced regarding the case, and a billing statement accounting for all billable time chargeable to her case. In response to Hinton's letter, respondent promised to send a detailed billing statement, but failed to do so.

Hearing Committee No. 7 found that respondent (1) neglected Hinton's case and caused her to lose her claims under Title VII, the ADA, and the D.C. Human Rights Act, in violation of Rules 1.1(a) and (b); (2) failed to represent her zealously and diligently within the bounds of the law for the same reasons, in violation of Rule 1.3(a); (3) failed to keep Hinton reasonably informed and sufficiently educated about the case to permit her to make informed decisions, in violation of Rules 1.4(b) and (c); and (4) failed to take timely steps to the extent practicable to protect Hinton's interests upon termination of the representation, in violation of Rule 1.16(d).

Hearing Committee No. 7 recommended (1) that respondent be suspended from the practice of law for sixty days, (2) that he make restitution payments (with interest at the legal rate) to Hinton, and (3) that his sanction should not run concurrent to that imposed in the other disciplinary matters.

### D. Proceedings Before the Board on Professional Responsibility

All of the disciplinary proceedings were reviewed by the Board. The Board consolidated the Richard, Bean, Adams, and Gill matters adjudicated by Hearing Committee Nos. 1 and 10, and considered as well the second proceeding, heard by Hearing Committee No. 7, the Hinton matter. Upon review of the findings of fact and conclusions of law of each Hearing Committee, the Board recommended that respondent be suspended from the practice of law for three years with reinstatement conditioned upon proof of fitness, and that he make a restitution payment of $2,250.00 to Richard, and $1,500 to Hinton.

## II.

### DISCUSSION

■ Because the violations in these cases reveal a continuous pattern of mis-

conduct spanning several years and five clients, the sole issue we resolve is the nature and length of respondent's separation from the practice of law. Respondent urges a ninety-day suspension or, in the alternative, a stay of the imposition of the suspension and probation for one year. Bar Counsel recommends disbarment and the Board recommends that respondent be suspended from the practice of law for three years with reinstatement conditioned upon proof of fitness and that he make restitution payments to Richard and Hinton. We are not persuaded by respon-.dent's request because it ignores his pattern of misconduct and minimizes his dishonesty; thus, our focus is upon the Board's recommendation and that of Bar Counsel.

The system of attorney discipline, including the imposition of sanctions, is the responsibility and duty of this court. *See In re Austin,* 858 A.2d 969, 975 (D.C.2004); *In re Kitchings,* 857 A.2d 1059 (D.C.2004). District of Columbia Bar Rule XI, § 9(g)(1) (2004) provides that "the Court shall accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record, and shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." So long as the Board's sanction recommendation falls within the wide range of acceptable outcomes, it comes to us with a strong presumption in favor of its imposition. *See In re Austin, supra,* 858 A.2d at 975. In deciding whether to adopt the Board's recommendation, we must examine the "nature of the violation, aggravating and mitigating circumstances, the absence or presence of prior disciplinary sanctions, the moral fitness of the attorney, and the need to protect the legal

profession, the courts, and the public." *In re McLain,* 671 A.2d 951, 954 (D.C.1996) (citation omitted).

The nature of respondent's violations is indeed serious. His misconduct includes, *inter alia,* intentional neglect and dishonesty, causing all five of his clients to lose their respective claims against their former employers, and causing Bean and Gill to suffer large default judgments. In addition, respondent's actions surrounding the proffer of a purported subpoena to a judicial officer as a justification for failing to appear at a court proceeding raises severe and unavoidable concerns about dishonesty. It is largely this latter factor which, Bar Counsel argues, warrants disbarment.

In *In re Corizzi,* 803 A.2d 438 (D.C. 2002) we disbarred Corizzi after he counseled two of his clients to lie at their respective depositions to conceal his relationship with a referring chiropractor, failed to advise one of his clients of two offers of settlement, and made false statements to Bar Counsel denying that he counseled his clients to lie. *In re Corizzi, supra,* 803 A.2d at 440. In noting the egregiousness of Corizzi's conduct, we concluded that his actions displayed "a continuing and pervasive indifference to the obligations of honesty in the judicial system and to the duty of loyalty owed to the interests of his clients." *Id.* at 443. We concluded that disbarment was warranted.

In *In re Goffe,* 641 A.2d 458 (D.C.1994), Goffe manufactured evidence for use before the Internal Revenue Service, lied under oath to the Tax Court, and continued to lie about his actions to the hearing committee. *In re Goffe, supra,* 641 A.2d at 465. In a civil dispute in which Goffe was a party, he forged signatures to documents on which the purported signatory had no intent to be bound and falsely notarized documents to obtain an economic benefit.

*Id.* We concluded that disbarment was the appropriate sanction for Goffe because he "showed a pattern of dishonesty and fabrication of evidence over a number of years, ... [and his] repeated falsification and fabrication of documents and related lying created the prospect of injustice and unfair advantage with respect to a range of government institutions as well as to private individuals." *Id.*

In *In re Haupt,* 422 A.2d 768 (D.C.1980) one of Haupt's client's contacted him to represent her in a divorce action. Haupt made no efforts to ascertain the defendant's whereabouts and attempted to have him served at his last known address, where he had not lived for years. *Id.* The client, after several unsuccessful attempts to contact Haupt, filed a complaint, which was referred to Bar Counsel. Haupt thereafter contacted his client for the first time assuring her that she would receive her divorce and sought and received more money from his client for service by publication. The Superior Court subsequently dismissed the divorce complaint. In the interim, Haupt misrepresented to Bar Counsel that the complaint had been reinstated and that nothing was being done on his client's case because she had not paid for publication. Haupt did nothing further in the case. *Id.* We suspended Haupt from the practice of law for three years and imposed a fitness requirement because of his prior disciplinary record and "his callous disregard for his clients and an almost total lack of understanding of the ethical code that must govern his daily professional life." *Id.* at 771.

In a case of this nature our observation in *Kitchings, supra,* is sound. We said, "[i]t is difficult even in the best of circumstances, to try to match the facts of one case with previously decided cases in order to align the sanctions we impose for similar conduct." *Id.* at 1059. The Board addressed respondent's demonstrated deficiencies, and concluded that he should not have the privilege of practicing law for a substantial period of time, whether that be accomplished by disbarment or suspension. The evidence shows a pattern of aggravated neglect of several clients. This behavior, in turn, caused a range of harm to his clients including adverse judgments, financial loss, needless uncertainty, and a disrespect for the profession. Although respondent did not obtain financial gain by means of unlawful conversion of client funds, he readily accepted fees from clients without rendering the requisite service in return. Of paramount importance in this instance is the unequivocal evidence showing dishonesty by respondent in his representations to a judge, other lawyers, and to his clients.

In mitigation the Board also considered that respondent was a sole practitioner without prior discipline. The Board noted that there was testimony that "demonstrate[s] that [Respondent] has the ability to ethically and professionally represent clients; his failure is that he does not do this consistently."

We do not think the difference between the three-year suspension with fitness recommended by the Board and Bar Counsel's recommendation of disbarment is a matter of significant concern in this case because Respondent, pursuant to the sanction we now impose, will not be reinstated to practice law until he has demonstrated his fitness to do so. On balance, we adopt the recommendation of the Board. Accordingly, it is hereby

ORDERED that respondent, Eric Steele, shall be suspended from the practice of law for a period of three years with reinstatement conditioned upon his making a showing, by clear and convincing evidence, that he is fit to resume the practice

of law, *see In re Roundtree*, 503 A.2d 1215, 1216 (D.C.1985); it is

FURTHER ORDERED that for purposes of reinstatement, suspension will be deemed to commence upon the filing of the affidavit required by D.C. Bar Rule XI, § 14;[3] it is

FURTHER ORDERED that as a condition of reinstatement, respondent make restitution to his client, Iris Richard, in the amount of $2,250.00 plus interest at the legal rate; and it is

FURTHER ORDERED that as a condition of reinstatement, respondent make restitution to his client, Lisa Hinton, in the amount of $1,500.00 plus interest at the legal rate.[4]

*So ordered.*

**3.** Pursuant to D.C. Bar Rule XI § , 14(a)-(c), respondent is required to notify all clients and attorneys for adverse parties about the suspension, and pursuant to Rule XI, § 14(h), respondent must maintain records showing compliance with the section 14 requirements as a condition of eventual reinstatement. *See* D.C. Bar Rule XI, § 16(a).

**4.** *See In re Austin*, 858 A.2d 969, 978 (D.C. 2004).