*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 20-BG-601

IN RE DENI-ANTIONETTE MAZINGO-MAYRONNE, RESPONDENT.

A Suspended Member of the Bar
of the District of Columbia Court of Appeals
(Bar Registration No. 479656)

On Report and Recommendation
of the Board on Professional Responsibility

(BDN-446-07, BDN-047-11, BDN-405-14)

(Argued February 8, 2022                                    Decided June 9, 2022)

*John O. Iweanoge*, *II* for respondent.

*Myles V. Lynk*, Senior Assistant Disciplinary Counsel, with whom *Hamilton P. Fox, III*, Disciplinary Counsel, was on the brief, for petitioner.

Before EASTERLY and MCLEESE, *Associate Judges*, and THOMPSON, *Senior Judge.*[*]

Opinion for the court PER CURIAM.

Dissenting opinion by *Senior Judge* THOMPSON at page 11.

---

[*] Senior Judge Thompson was an Associate Judge of the court at the time of argument. On October 4, 2021, she was appointed as a Senior Judge but she continued to serve as an Associate Judge until February 17, 2022. *See* D.C. Code §§ 11-1502, -1504(b)(3) (2012 Repl.). On February 18, 2022, she began her service as a Senior Judge. *See* D.C. Code § 11-1504.

PER CURIAM: The Board on Professional Responsibility determined that respondent Deni-Antionette Julia Mazingo-Mayronne committed flagrant acts of dishonesty that violated the District of Columbia and Maryland Rules of Professional Conduct. The Board recommended that Ms. Mayronne be disbarred. Ms. Mayronne does not challenge the findings of misconduct, instead arguing solely that disbarment is not an appropriate sanction. We accept the Board's recommended sanction of disbarment.

## I.

The Board's recommendation of disbarment rests on the following, among other things.

1. Ms. Mayronne was admitted to the District of Columbia Bar in 2002 and to the Bar of the United States District Court for the District of Maryland in 2005. From 2002 to 2005, Ms. Mayronne repeatedly filed forms for clients in bankruptcy cases stating that she was a non-attorney petition preparer. Ms. Mayronne did not meet the definition of a petition preparer, because she was an attorney, was giving legal advice, and was charging her clients accordingly. Ms. Mayronne made

knowingly false statements in those filings. Although Ms. Mayronne testified at the disciplinary hearing that she did not know that she was making false statements in the filings, the Hearing Committee did not credit that testimony.

2. When Ms. Mayronne applied in 2005 to be admitted to the District of Maryland Bar, she intentionally and falsely denied having prior criminal convictions. Ms. Mayronne's testimony at the disciplinary hearing about why she did that was not credible to the Hearing Committee.

3. In 2005, Ms. Mayronne intentionally made numerous false statements in connection with her personal bankruptcy. Ms. Mayronne did not provide any explanation for some of those false statements, and her explanation for one false statement was not credible to the Hearing Committee.

4. In 2006, Ms. Mayronne was barred from practicing law in the federal Bankruptcy Court in the District of Maryland. Ms. Mayronne nevertheless continued to represent a client in that court, knowing that her conduct violated the injunction. Although Ms. Mayronne testified at the disciplinary hearing that she lacked such knowledge, the Hearing Committee did not credit that testimony.

5. In 2010, Ms. Mayronne represented a client in a Maryland personal injury suit even though Ms. Mayronne was not admitted to practice law in Maryland. Ms. Mayronne failed to advise her client properly in that matter. After a fee dispute, Ms. Mayronne intentionally disclosed damaging and confidential information about her client to opposing counsel. Although Ms. Mayronne testified at the disciplinary hearing that the disclosure was inadvertent, the Board found that her testimony was intentionally false.

In recommending disbarment, the Board concluded that "over the first eight years of her career as an attorney, [Ms. Mayronne] repeatedly engaged in conduct that was dishonest and disingenuous," violating numerous rules of professional conduct. The Board also found that Ms. Mayronne repeatedly provided explanations for her conduct that "were plainly false." That included presenting "intentional falsehoods" to the Hearing Committee in her testimony in 2015. The Board explained that disbarment was warranted for "flagrant" dishonesty "reflect[ing] a continuing and pervasive indifference to the obligations of honesty in the judicial system." *In re Pennington*, 921 A.2d 135, 141 (D.C. 2007) (internal quotation marks omitted).

**II.**

In determining what sanction to impose for violations of the Rules of Professional Conduct, "this Court 'shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted.'" *In re Vohra*, 68 A.3d 766, 771 (D.C. 2013) (quoting D.C. Bar R. XI, § 9(h)(1)). "A sanction recommendation from the Board comes to us with a strong presumption in favor of its imposition." *In re Baber*, 106 A.3d 1072, 1076 (D.C. 2015) (per curiam) (brackets and internal quotation marks omitted). In general, "if the Board's recommended sanction falls within a wide range of acceptable outcomes, it will be adopted and imposed." *Id.* (internal quotation marks omitted). "Ultimately, however, the system of attorney discipline, including the imposition of sanctions, is the responsibility and duty of this court." *Id.* (internal quotation marks omitted). "Where this court takes a significantly different view of the seriousness of an attorney's conduct, the court thus has not hesitated to reach its own conclusion as to the appropriate sanction." *Id.*

We conclude that the Board's recommendation of disbarment is supported by the record of Ms. Mayronne's repeated acts of dishonesty. As this court has explained, "honesty is basic to the practice of law," and "a continuing and pervasive indifference to the obligations of honesty in the judicial system" can warrant disbarment. *In re Guberman*, 978 A.2d 200, 209-10 nn.12 & 13 (D.C. 2009) (brackets and internal quotation marks omitted). Given the circumstances of this case, we view the Board's recommendation of disbarment as reasonable and as consistent with prior disciplinary decisions of this court. *See, e.g.*, *In re Bynum*, 197 A.3d 1072, 1073-74 (D.C. 2018) (per curiam) (in uncontested discipline case, court accepts Board's recommendation of disbarment, which "appears to flow directly from our precedent"; respondent's "dishonest conduct spanned five years, from the outset of his representation of clients, through the disciplinary hearing in this case"); *see generally, e.g.*, *In re Baber*, 106 A.3d at 1077 (disbarring respondent despite Board's recommendation for more lenient sanction; "Although an isolated incident of dishonesty will not ordinarily by itself warrant disbarment, this case involves a series of knowingly false statements, not only to [a client] but also orally to the court, in written pleadings filed in court, and in a written submission to Bar Counsel. Mr. Baber's dishonesty was also protracted, starting in October 2007 and continuing through to his December 2009 submission to Bar Counsel. The repeated and protracted nature of Mr. Baber's dishonesty weighs significantly in favor of

disbarment. Particularly where dishonesty is aggravated and prolonged, disbarment is the appropriate sanction.") (citations and internal quotation marks omitted).

In sum, accepting the Board's recommendation of disbarment in this case would not "foster a tendency toward inconsistent dispositions for comparable conduct" or "otherwise be unwarranted." D.C. Bar R. XI, § 9(h)(1).

We are not persuaded by Ms. Mayronne's arguments to the contrary. First, Ms. Mayronne attempts to minimize the seriousness of her dishonesty, arguing for example that her dishonesty did not harm her clients or affect the outcome of judicial decisions. Relatedly, Ms. Mayronne appears to argue that dishonesty warrants disbarment only if the dishonesty involved criminal conduct or the improper taking of funds for personal gain. To the contrary, however, the cases cited above make clear that disbarment can be warranted for a prolonged pattern of repeated dishonesty, even in the absence of the aggravating circumstances Ms. Mayronne identifies.

Second, Ms. Mayronne challenges the Board's conclusion that Ms. Mayronne gave intentionally false testimony to the Hearing Committee to try cover up her prior

dishonesty. As Ms. Mayronne accurately points out, the Hearing Committee did not explicitly find that Ms. Mayronne's testimony at the disciplinary hearing was intentionally false. We agree with the Board, however, that the Hearing Committee's findings clearly imply that Ms. Mayronne's testimony at the disciplinary hearing was in some respects intentionally false. In any event, the Board was free to reach an independent conclusion as to whether Ms. Mayronne's testimony was intentionally false. *See In re Bradley*, 70 A.3d 1189, 1194 (D.C. 2013) (per curiam) (whether attorney gave "sanctionable false testimony before Hearing Committee is a question of ultimate legal fact" that Board and this court review de novo). We agree with the Board's conclusion on that point.

Third, Ms. Mayronne argues that she did not engage in a prolonged pattern of repeated dishonesty, because her instances of dishonesty (1) fell into several discrete groups, (2) occurred primarily between 2005 and 2007, and (3) did not occur after 2011. We disagree. Ms. Mayronne's account omits her intentionally false testimony at the disciplinary hearing in 2015. Moreover, we do not see Ms. Mayronne's instances of dishonesty as isolated or discrete. To the contrary, in our view the record fully supports the Board's conclusion that "over the first eight years of her career as an attorney, [Ms. Mayronne] repeatedly engaged in conduct that was dishonest and disingenuous."

The dissent concludes that accepting the Board's recommendation of disbarment would be inconsistent with the discipline imposed by this court in comparable cases. *Infra* at 12-27. We respectfully disagree.

As we have explained, *see supra* at 6-7, this case in our view fits comfortably with prior cases in which we have disbarred attorneys for engaging in a broad, prolonged, and persistent pattern of dishonesty. It is true, as the dissent points out, *infra* at 21-23, that this court has not always imposed disbarment in cases involving multiple instances of dishonesty. The cases cited by the dissent, however, differ from the present case in two respects. First, in all of the cited cases, the Board recommended a sanction less severe than disbarment. *See, e.g.*, *In re Guberman*, 978 A.2d at 203 (Board recommended eighteen-month suspension based on multiple dishonest statements to law firm, over period of year, in connection with single case); *In re Schoeneman*, 891 A.2d 279, 280 (D.C. 2006) (per curiam) (Board recommended four-month suspension); *In re Wright*, 885 A.2d 315, 316 (D.C. 2005) (per curiam) (Board recommended one-year suspension with requirement that respondent demonstrate fitness before reinstatement). For example, in *In re Steele*, 868 A.2d 146 (D.C. 2005), the court adopted the Board's recommendation of a three-year suspension, with a requirement that Mr. Steele demonstrate his fitness to practice law before he could be reinstated. *Id.* at 152-55. The court implied,

however, that it might well have disbarred Mr. Steele if the Board had recommended disbarment. *Id.* at 147 (referring to Bar Counsel's argument that Mr. Steele should be disbarred as "well founded"), 153 (explaining "strong presumption in favor of" Board's recommended sanction, "[s]o long as the Board's recommendation falls within the wide range of acceptable outcomes"), 154 (explaining that difference between disbarment and three-year suspension with fitness requirement was not "a matter of significant concern in this case"); *see generally In re Mensah*, 262 A.3d 1100, 1101-02, 1105 (D.C. 2021) (per curiam) (three-year suspension with fitness requirement is "second-harshest available sanction"; disbarment in practical terms is comparable to a five-year suspension with fitness requirement).

Second, a number of the cases involved (1) potential extenuating or mitigating circumstances not present in this case and/or (2) instances of dishonesty more limited in scope or duration than the pattern of dishonesty in the present case. *See, e.g.*, *In re Chisholm*, 679 A.2d 495, 497-98, 503-04 (D.C. 1996) (prolonged dishonesty with respect to single case for single client; some evidence that respondent was suffering from medical and psychiatric problems); *In re Hutchinson*, 534 A.2d 919, 925-26 (D.C. 1987) (two instances of dishonesty; respondent recanted "of his own volition," voluntarily surrendered proceeds of misconduct, showed remorse, was suffering from emotional crisis, and sought counseling).

**III.**

Respondent Deni-Antionette Mazingo-Mayronne is hereby disbarred from the practice of law in the District of Columbia.

*So ordered*.

THOMPSON, *Senior Judge*, dissenting: Our disciplinary rules require us to "adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C. Bar R. XI, § 9(h)(1). The Board's recommended sanction "comes to us with a strong presumption in favor of its imposition," *In re Baber*, 106 A.3d 1072, 1076 (D.C. 2015) (quoting *In re Vohra*, 68 A.3d 766, 771 (D.C. 2013)). But, importantly, we endeavor to "enforce a general sense of equality in the sanctions handed out . . . ." *In re Corizzi*, 803 A.2d 438, 439 (D.C. 2002).

I respectfully dissent from the opinion of the court in this case because I believe that disbarment of respondent Mazingo-Mayronne is an "inconsistent disposition[] for comparable conduct" and contravenes the sense of equality that we seek in the sanctions we impose. To be sure, the record in this case reveals repeated

instances of dishonesty and other misconduct by respondent Mazingo-Mayronne. I also fully agree with my colleagues that dishonesty by an attorney is always a serious matter. But a comparison of respondent's dishonest conduct cited by the Hearing Committee and the Board (and detailed below) to the dishonest conduct of attorneys in other cases in which we have imposed a suspensory sanction will, I think, show why I reach a conclusion different from that of my colleagues.

In January 2005, respondent applied for admission to practice in the United States District Court for the District of Maryland, which admission would also allow her to appear in the Bankruptcy Court. In her application, which she signed under penalty of perjury, she answered "no" to a question asking whether, "[e]xcluding traffic violations punishable by fine only, [she had] ever been convicted of . . . any crime." In fact, respondent had been convicted of two misdemeanor criminal offenses — reckless driving in 1993 and driving while under the influence ("DUI") in 1999 — both of which had resulted in probation and a suspension of her driver's license, and both of which she had already disclosed on her (successful) D.C. Bar application (in response to a slightly differently worded question).

In 2001, prior to being licensed to practice in any jurisdiction, respondent established a business, Legal Forms Fitted & Filed, LLC ("Legal Forms") in Maryland to assist clients to file for bankruptcy as a "non-attorney bankruptcy petition preparer." In 2005, after she had been admitted to practice law in the District of Columbia and after she was admitted to practice in the federal District Court in Maryland, she filed nine bankruptcy petitions in connection with which she certified at least fifty-five documents as a "non-attorney" petition preparer.

In May 2005, respondent filed for Chapter 7 bankruptcy on her own behalf in the United States Bankruptcy Court in Maryland. In doing so, she filed required statements about her assets and liabilities, certifying under penalty of perjury that the financial information she provided was true and correct to the best of her knowledge. The Hearing Committee identified three falsities in her bankruptcy petition materials. In response to a question about any payments aggregating more than $600 made to a creditor within ninety days preceding the bankruptcy filing, respondent knowingly did not disclose at least three monthly mortgage payments of $1,281.51 that were actually made by her then-husband. Respondent also falsely represented that "she was neither an 'officer, director, partner, or managing executive' of any business, nor a self-employed attorney," when she was "both a 'managing executive' of a business and a self-employed attorney at the time she

signed [the petition]." Finally, respondent falsely stated that the total value of her bank accounts was $25.00, while in fact she had a total of $941.30 in her three accounts.

In 2006, respondent stipulated to a Bankruptcy Court consent order that enjoined her from acting as a bankruptcy petition preparer and from practicing law in the United States Bankruptcy Court for the District of Maryland. However, she did not withdraw her appearance in that court on behalf of a client who was asserting a claim to title to a house that was the primary asset of the debtor's bankruptcy estate. She continued to represent the client in settlement negotiations. After a show-cause hearing requiring respondent to show cause why she should not be held in civil contempt for violation of the consent order, the court rejected respondent's arguments that she had a good faith belief that the consent order precluded her only from representing new clients. The Hearing Committee found that respondent violated the consent order knowingly.

The Hearing Committee found that in addition to the foregoing misconduct, respondent violated her duty of confidentiality to her client Kimberly Simmonds. The Hearing Committee found that respondent's conduct in the case of Ms.

Simmonds was the most serious of her misconduct. Similarly, the Board reserved the adjective "egregious" for respondent's conduct in connection with her representation of Ms. Simmonds.[1] Ms. Simmonds hired respondent in February 2010 to help establish an LLC in Maryland. Respondent's email signature and letterhead, which she used in correspondence with Ms. Simmonds and with the Maryland Department of Assessments and Taxation, listed her home office address in Maryland. Ms. Simmonds therefore believed that respondent was licensed to practice law in Maryland, and respondent did not inform her otherwise. In March 2010, respondent offered to represent Ms. Simmonds in her personal injury claim against GEICO relating to a car accident that took place in Maryland. In November 2010, Ms. Simmonds discovered that respondent was not licensed to practice law in Maryland and sent her a letter terminating the representation. On November 24, Respondent informed the GEICO representative (Ms. Shanks) that Ms. Simmonds had terminated respondent's services. That same day, respondent replied to an email from Ms. Simmonds, attached a letter informing Ms. Simmonds that respondent would be placing a lien on GEICO's settlement offer (in order to collect fees she believed she was owed), and cc'd Ms. Shanks. Respondent's reply email was the most recent email in a string of email communications that had been exchanged

---

[1] Disciplinary Counsel agrees that "[p]erhaps the most serious violation . . . was [r]espondent's violation of her duty of confidentiality to her client, Ms. Simmonds."

between respondent and Ms. Simmonds, several of which discussed Ms. Simmonds' injuries, monetary damages, and respondent's negotiation strategies. Respondent did not delete the earlier string of emails before replying to Ms. Simmonds with a cc to Ms. Shanks. The Hearing Committee rejected respondent's explanation that she forwarded the string of emails inadvertently by "push[ing] the wrong thing" or "push[ing] the wrong button," resulting in "email[ing] everything to Ms. Shanks." The Hearing Committee found that respondent instead "deliberately entered Ms. Shanks's name and email address in the 'cc' box of the email and intentionally sent the emails to Ms. Shanks." The Board made an additional finding that respondent intentionally gave false testimony before the Hearing Committee when she claimed that she "accidentally" disclosed Simmonds' confidential information to the GEICO representative.


Considering all of the foregoing, the Hearing Committee recommended a six-month suspension. Disciplinary Counsel argued that respondent's conduct warrants disbarment or at least a one-year suspension with a requirement to prove fitness before reinstatement. Citing respondent's "persistent difficulty in telling the truth" and "egregious and inexplicable violation" of her duty to a client, the Board recommended that respondent be disbarred from the practice of law in the District of Columbia.

I reiterate that I readily agree with my colleagues and with the Board that respondent's dishonest conduct was serious. I fully endorse the principle that "[l]awyers have a greater duty than ordinary citizens to be scrupulously honest at all times, for honesty is basic to the practice of law." *In re Hutchinson*, 534 A.2d 919, 924 (D.C. 1987) (internal quotation marks omitted). And, if we were writing on a clean slate, I would have no trouble agreeing that disbarment is warranted based on respondent's documented dishonest conduct. But, in cases where discipline is based on an attorney's dishonest conduct, our court generally has reserved the sanction of disbarment for cases of "persistent, protracted, and extremely serious and flagrant acts of dishonesty," *In re Pelkey*, 962 A.2d 268, 282 (D.C. 2008), or dishonesty that involved a disregard of client interests or a misappropriation or attempted theft of funds. *See, e.g.*, *Baber*, 106 A.3d at 1076-77 (imposing disbarment on attorney whose "repeated dishonesty [wa]s particularly disturbing because it came at the expense of his client's interests and was in large part driven by a desire for personal gain"; noting that, in addition to failing to competently represent his client and pressuring the client to pay an excessive fee that she had not agreed to pay, the attorney "improperly used confidential information from his client to make knowingly false accusations of fraud against [the] client in several pleadings" and lied to the court about why the client had not met certain deadlines, "basically thr[owing] his client under the bus"); *In re Johnnie L. Johnson*, ___ A.3d ___, No.

19-BG-240 (D.C. May 26, 2022) (disbarring attorney who petitioned for fees in a workers' compensation matter that were in excess of the work he actually performed on his client's behalf or for work not performed, sought duplicative payment, and falsely testified that he had received no payment from the client); *In re Cleaver-Bascombe*, 986 A.2d 1191, 1199 (D.C. 2010) (disbarring attorney who submitted a "'patently fraudulent' voucher seeking compensation from public funds for work she had not performed").

I cannot agree with my colleagues or the Board that the various instances of respondent's dishonest conduct (the omission of respondent's DUI and reckless driving convictions from her application to practice in the federal District Court in Maryland, her representations that she was a non-attorney bankruptcy petition preparer, her false answers on her personal bankruptcy petition, her letterhead implying that she was licensed to practice law in Maryland, and her testimony to the Hearing Committee that her forwarding of the confidential email string to GEICO was the result of "push[ing] the wrong thing") amount to the type of "persistent, protracted, and extremely serious and flagrant acts of dishonesty" that we have said warrant disbarment. *Pelkey*, 962 A.2d at 282. In my view, respondent's dishonest conduct pales by comparison to the conduct involved in those dishonesty cases. *See, e.g.*, *id.* at 277-82 (disbarring attorney who "deliberately deceiv[ed] and defraud[ed]

[another individual] by leading her to believe that they were partners in their joint business venture," "thereby induc[ing] her to contribute more than $32,000 of her own funds," but then "intentionally and surreptitiously excluded her from an ownership interest and took the funds from the venture[]" and also made a series of false representations in actions before an arbitrator, the D.C. Superior Court, the California State Court of Appeals, and a Hearing Committee (internal quotation marks omitted)).

Indeed, some of respondent's misrepresentations at least arguably amounted to sharp practices and less-than-candid responses rather than outright flagrant (meaning, per the dictionary definition, blatant, glaring, or obvious) false statements. For example, as respondent highlights in her brief, she has never been admitted to the State Bar of Maryland as an attorney, such that, in a sense, she *was* a non-attorney preparer when she prepared bankruptcy petitions in Maryland for clients of her Legal Forms business. As the Hearing Committee found, it was respondent's husband, not respondent herself, who made mortgage payments during the three months before her personal (Chapter 7) bankruptcy petition was filed. It is therefore significant that — as respondent's counsel established through questioning during the hearing before the Hearing Committee — the relevant question on respondent's *Chapter 7* personal bankruptcy Statement of Financial Affairs (question 3(a)) instructed that

"[m]arried debtors filing under *chapter 12 or chapter 13* must include payments by either or both spouses" (italics added). Further, reasonable minds can disagree about whether respondent's omissions and misrepresentations may fairly be termed "persistent" or "protracted," as she had earlier disclosed her criminal convictions on her D.C. Bar application; her identification of herself as a non-attorney preparer, on documents that the evidence showed she filed in 2005, ceased after Bankruptcy Court officials cited the practice as improper; and the false statements she made on her personal bankruptcy Statement of Financial Affairs and personal-property schedule were contained in a single May 12, 2005, filing. To be sure, all of these violations were inconsistent with the candor we demand of attorneys, but it is not clear that by her conduct respondent exhibited "a continuing and pervasive indifference to the obligations of honesty in the judicial system," Board Report at 21 (quoting *In re Pennington*, 921 A.2d 135, 141 (D.C. 2007)), so as to warrant the severe sanction of disbarment.[2]

---

[2] The Hearing Committee found that respondent's omissions from her D.C. Bar application, though "somewhat serious" by their nature, were "inconsequential," as there was "no evidence that [r]espondent's application to practice would have been denied if she had been truthful about her criminal history." Regarding respondent's "misrepresentation[]" that she was a "Non-Attorney Bankruptcy Petition Preparer," the Hearing Committee found no evidence that the misrepresentation "influenced any decision by the Bankruptcy Court in any way" or harmed any client. The Hearing Committee also found no evidence that respondent acted with an intent to deceive when she certified the bankruptcy forms she filed as part of her Legal Forms business. As to respondent's personal bankruptcy petition,

Consistency with our case law suggests that the appropriate sanction for such violations of the Rules of Professional Conduct — even when the record also establishes repeated incidents of dishonesty — is suspension for a substantial period of time, with or without a requirement to show fitness before reinstatement, rather than disbarment. That was the case in *Hutchinson*, notwithstanding its recognition of a lawyer's duty to be "scrupulously honest at all times." *See* 534 A.2d at 920, 921, 924-26 (suspending respondent, "a partner in a large Washington law firm," for one year after he agreed to lie, and did lie, "to the SEC on two occasions to conceal an insider trading deal" in order to avoid criminal punishment and protect a "tidy profit," i.e., in order "to guarantee the success of [his] misdeeds"); *see also, e.g.*, *In re Guberman*, 978 A.2d 200, 206-07 (D.C. 2009) (detailing facts of several dishonesty cases, a number involving falsified documents, altered forms, or misrepresentations on applications, in which suspensory sanctions were imposed); *In re Schoeneman*, 891 A.2d 279, 280 (D.C. 2006) (imposing a four-month suspension on an attorney who, in matters for three separate clients, failed to seek the lawful objectives of his clients, misled the clients and lied to them as to the status of their cases, concealed from them his suspension from practice, and engaged in the

---

the Hearing Committee found "no evidence" that accurately disclosing petitioner's bank account amounts would have "changed the outcome of [respondent's] case in any way." These findings, too, weigh against a conclusion that respondent's dishonesty, though serious, was "extremely" or "very" serious.

unauthorized practice of law); *In re Wright*, 885 A.2d 315, 315-16 (D.C. 2005) (imposing a one-year suspension, with reinstatement conditioned on a showing of fitness, for violations in five client matters that "revealed a pattern of dishonesty and disregard for the rights and interests of [the attorney's] clients and third parties," including settling clients' personal injury claims without their knowledge or consent, failing to keep clients properly informed and abide by their decisions, "knowingly delivering an erroneously issued insurance check to the client without warning her against cashing it," and avoiding paying medical providers what they were owed by dishonestly representing to them that settlements had not yet been reached); *In re Steele*, 868 A.2d 146, 147-53 (D.C. 2005) (imposing a three-year suspension with a fitness requirement where the attorney, with respect to five client matters, inter alia intentionally failed to seek the client's lawful objectives and caused the clients to lose their claims, failed to keep the clients reasonably informed about the status of their cases, engaged in conduct involving dishonesty, fraud, deceit or misrepresentation when he repeatedly advised a client that he had filed an opposition to a dispositive motion when he had not done so, and in one client's case proffered to a judicial officer a fabricated subpoena as a justification for failing to appear at a court proceeding); *In re Chisholm*, 679 A.2d 495, 501-05 (D.C. 1996) (imposing a six-month suspension for persistent and extensive dishonesty and neglect of a client matter over a period of six years, resulting in the needless incarceration of the client).

Indisputably, respondent's dishonest statements were serious, but they were no more serious than the dishonesty involved in the just-cited suspensory-sanction cases.[3]

Nor can I agree that, on the record before us, respondent's additional misconduct in the Simmonds matter warrants disbarment. As described above, the Hearing Committee rejected respondent's testimony that she mistakenly performed the physical action by which the email string was sent to GEICO. The Hearing Committee highlighted (and the Board underscored the Hearing Committee's finding) that respondent typed in the address of the GEICO representative and also attached the letter asserting a lien against any settlement amount, indicating that respondent acted "intentionally" and that she "purposefully" sent the email string. But neither the Hearing Committee nor the Board addressed whether respondent focused on the fact or was aware (respondent testified that she was not aware) that she was transmitting the entire email string. Though finding that respondent intentionally typed Ms. Shank's email address to effect a cc to her and thus rejecting

---

[3] As for respondent's violation of the Bankruptcy Court consent decree, that court declined to hold respondent in contempt because her post-consent-order filing was on behalf of both herself and the client she had been representing at the time of the consent decree. Regarding respondent's unauthorized practice of law in connection with advising bankruptcy clients, it is noteworthy that Disciplinary Counsel conceded that it did not prove by clear and convincing evidence a violation of Maryland Rule 5.5(a) and (b)(1) (relating to unauthorized practice) (although the Hearing Committee found otherwise).

respondent's testimony that she had merely "push[ed] the wrong thing," the Hearing Committee did not discredit — and neither the Hearing Committee nor the Board even specifically mentioned — respondent's testimony that she did not "look at the rest of the emails to see what was there," "wasn't aware [that an existing email string] was attached," and was "not aware when [she] pressed reply to an email, that the prior emails were going to be included in that."

The possibility that respondent pushed "send" rather than "delete" (to erase the email string) is not inherently incredible; who among us has not unthinkingly forwarded an email string, or received a forwarded string, that would have been better left unforwarded? Without an adverse Hearing Committee credibility determination or finding on this more specific point, I am unable to agree that respondent's conduct was anywhere near as egregious as the conduct that has caused us to disbar lawyers who have deliberately exposed their clients to loss, recrimination, or criminal prosecution. *See, e.g., Baber*, 106 A.3d at 1074-77 (disbarring attorney for, inter alia, filing a lawsuit against the client in which he falsely accused her of fraudulently using his legal services in the probate matter to "conceal and misrepresent [her mother's] assets and to deny her brothers their lawful share of the estate's assets," thereby causing one of the brothers to charge the client with malfeasance in the administration of the estate and resulting in her having to

post a $61,000 probate bond (internal quotation marks omitted)); *Corizzi*, 803 A.2d at 442-43 (disbarring attorney whose "far more egregious" conduct included instructing his clients to lie under oath at their depositions, thereby "blatantly solicit[ing] outright perjury by [the] clients on separate occasions" in order to conceal the attorney's own questionable referral relationship with a chiropractor, with the "predictable consequence[]" of "the virtual destruction of [the] clients' cases and their exposure to possible criminal prosecution").[4]

---

[4] The analyses by this court that the Board cited in recommending that respondent be disbarred likewise involved far more egregious facts than those found here. In *In re Kanu*, 5 A.3d 1 (D.C. 2010), we imposed disbarment where the attorney carried out "an enterprise necessarily entailing an immigration benefits fraud on the United States government," that subjected the attorney's clients, who the attorney knew did not qualify for the exemptions the attorney sought for them, "to very serious risks"; failed to communicate with the clients; and failed to give them promised refunds of substantial fees they had paid her. *Id.* at 6, 8. We noted the finding that the attorney "would have been hard pressed to devise a strategy that placed her client[s'] objectives and general welfare in greater jeopardy." *Id.* at 6. In *In re Omwenga*, 49 A.3d 1235 (D.C. 2012), we disbarred an attorney who committed "sixty-eight violations of twenty Rules of Professional Conduct," including intentional misappropriation of client funds, filing false affidavits with the immigration court on behalf of clients, and making serious misrepresentations or being otherwise dishonest in three client matters, and additionally made false statements to Disciplinary Counsel and testified untruthfully before the Hearing Committee. *Id.* at 1236, 1238, 1239. We noted that the attorney's dishonest conduct "was coupled with a blatant disregard for his clients, a number of whom faced the threat of deportation." *Id.* at 1239.

A further consideration relevant to the sanction determination is that Disciplinary Counsel argued to the Board that an appropriate sanction would be either disbarment or a one-year suspension with a fitness requirement. I see nothing in the Board's Report or the wider record that adequately explains why Disciplinary Counsel now insists that disbarment is the only appropriate sanction. This calls into play a rule of thumb that we have applied in previous cases: that although this court is "not precluded from imposing a more severe sanction than that proposed by the prosecuting authority, that is and surely should be the exception, not the norm" in our adversarial disciplinary system. *Guberman*, 978 A.2d at 210 n.15 (internal quotation marks omitted); *see also In re Ukwu*, 926 A.2d 1106, 1119 (D.C. 2007) (invoking the foregoing rule of thumb where Disciplinary Counsel recommended suspension as "one of two alternative proposals" (the other being disbarment); concluding that outright disbarment was not appropriate).

For all the foregoing reasons, I cannot agree that a disbarment sanction is warranted in this case. I would impose a substantial suspensory sanction, which would maintain consistency with the sanctions we have imposed in other cases.